RALEIGH, CHARLOTTE AND SOUTHERN RAILROAD COM-
PANY v. MECKLENBURG MANUFACTURING COMPANY.

(Filed 27 May, 1914.)

1. Railroads—Condemnation—Right of Way—Measure of Damages
—Offsets.

The damages which may be awarded to the owner of lands
through which a railroad company has condemned a right of
way are such as are directly caused by and are confined to
injuries peculiar to the lands condemned, and not such as are
generally caused to lands in that community; nor is the railroad
company entitled to have the damages offset by advantages gen-
erally accruing to the community, but only those which accrue to
and enhance the value of the particular lands condemned by rea-
son of the advantages to be especially derived by them from the
operation of the railroad.

2. Railroads—Condemnation—Right of Way—Cotton Mills—Specu-
lative Damages—Expert Evidence—Trials.

Where a corporation is the owner of lands being condemned
for a right of way by a railroad company, upon which it has
tenant houses rented to its employees, and which are situated on
a tract of land upon which defendant operates a cotton mill, the
defendant is not entitled to recover damages of a speculative
character, *i. e.*, such as possible inconvenience caused to its em-
ployees by the noise or smoke from the plaintiff's trains, or the
inconvenience or danger to the operatives in going to or from
work; or danger to their children caused by the operation of the
railroad near their dwellings; or any possible increase in the
cost of operating the plant caused by the running of the plain-
tiff's trains, etc.; and as the damages recoverable are those ap-
parent to the ordinary observation of persons acquainted with the
value of lands in that locality, the matter is not such as would
call for "expert opinion" of those who have special knowledge
of cotton mills generally and of operating conditions generally
affecting their value.

3. Railroads—Condemnation—Rights of Way—Cotton Mills—Meas-
ure of Damages.

Where lands of a cotton mill corporation are condemned for a
right of way of a railroad company, the damages to be assessed
are the value of the lands taken for the right of way, and any
injury shown to have been done to the remaining part of the
land, by way of special damages, such as impairing the physical

property in the mechanical operation of its plant by vibrations and smoke; and it is error to allow evidence as to the difference in value of the whole tract before the condemnation of the right of way and afterwards.

4. Judgments — Interest — Interpretation of Statutes — Trials—Instructions—Evidence.

Interest is not allowed on a judgment rendered in the Superior Court for damages awarded by the jury to the owner for taking his lands in condemnation (Revisal, sec. 1954); for while the jury may award interest in their verdict, the owner may not complain when such has not been done, in the absence of a special request for instructions with relation to it, and the absence of evidence tending to show he is entitled to it.

5. Railroads—Condemnation—Dwellings—Tenant Houses—Interpretation of Statutes.

A railroad proceeded to condemn the lands of a cotton mill corporation, and upon the easement to be acquired there were several tenant houses belonging to the defendant. The defendant resisted the plaintiff's right of condemnation upon the ground that the statute, Revisal, 2575, expressly requires the consent of the owner to the taking of his "dwelling-house, yard, kitchen," etc.: *Held,* the section referred to is an exception to section 2578, giving such public-service corporation the right to condemn lands, and does not apply to tenant houses, but only to the dwelling of the owner of the lands, which is preserved to him for sentimental reasons; and which could not exist where such owner is a corporation renting the dwelling to its tenants.

HOKE and ALLEN, JJ., dissenting; WALKER, J., dissenting in part.

APPEAL by both parties from *Harding, J.,* at November Term, 1913, of MECKLENBURG.

*Tillett & Guthrie for plaintiff.*
*Maxwell & Keerans and Cansler & Cansler for defendant.*

PLAINTIFF'S APPEAL.

CLARK, C. J. This is the plaintiff's appeal in the proceeding to condemn a right of way 100 feet wide through the defendant's mill village located on a 20-acre tract of land near the northeast limits of Charlotte, upon which are the defendant's cotton mill

R. R. *v.* MANUFACTURING CO.

and other buildings, including 43 tenant houses. Running through this land is a public highway, which is an extension of a street in Charlotte. At about right angles to this highway are two private streets 50 feet wide extending from north to south entirely across said village. Fronting upon these streets are 34 of the 43 tenant houses composing the village, which are occupied by the mill operatives. The plaintiff's right of way runs diagonally across the village, intersecting the streets and highway above referred to at grade.

The plaintiff's exceptions are numerous, but all refer to the evidence and the charge on the measure of damages.

The plaintiff contends that the defendant was entitled as compensation to the value of the land embraced in the right of way, plus any direct actual damages to any part of the remaining land.

The defendant contends that the compensation to which it is entitled is the difference in the value of its entire manufacturing plant and premises, embracing 20 acres, before the right of way was condemned and afterwards, and that this difference in value is to be estimated by taking into consideration that the operation of a steam railroad would inconvenience and annoy the operatives by the noise, smoke, and inconvenience produced by the trains operating in proximity to their houses; that the dangers and perils to the operatives in going to and from their work would be increased by having to cross said railroad track; that the lives and limbs of the children of the mill operatives will be imperiled by their crossing said track in going to school and while playing near-by; that their parents would be in constant fear, while at work in the mill, lest the children should be run over by the passing trains, and that on account of these conditions the better class of operatives will be driven away and the defendant will be able to secure in their places only inferior help at increased wages, with result of a decrease in the quantity and quality of the mill output and an increase in the cost of production, thereby materially depreciating the market value of the property as a cotton manufacturing plant.

Over the plaintiff's objections, the jury were allowed to consider these as grounds of damages, and also to introduce as experts cotton manufacturers to give their opinion as to the effect upon the value of this mill property by the laying out of the· plaintiff's right of way. These experts estimated that the difference on the pay-roll from the above causes would be $4,000 to $5,000 per year, which they capitalized at $60,000 to $80,000, and expressed their "expert opinion" that the plaintiff should pay the defendant this sum of money as damages for the right of way 100 feet wide, of which only some 20 feet probably is actually occupied by the railroad, and a little over 300 yards long.

From the map, filed in the record, the track of the Southern Railway Company lies just beyond the outer edge of these mill premises, and much nearer the principal building and to many of the· tenant houses than is the track of the plaintiff. As the defendant placed its mill and village at this spot because of the benefit to it of such transportation facilities, it can hardly be that the proximity of the plaintiff's track can work so great a depreciation as the "experts" deemed.

It seems to us, upon the authorities and reason, that the measure of damages as claimed by the defendant and allowed by the court is speculative, and could be extended by that line of reasoning to any amount. Recently in this Court, in a cause where one railroad company sought to extend a spur line across the main track of another, a somewhat similar calculation was made, based upon the number of times that the trains and cars of the railroad objecting would be stopped, the loss of wages, the possible and probable damages from collisions and the deaths and injuries to persons and cars, and it was very ingeniously figured up that such damages properly capitalized would amount to hundreds of thousands of dollars. But the record in that case shows that while still objecting as a matter of law to the other railroad crossing its track, it was finally agreed that $300 was the proper amount of damages if the other railroad, as a matter of·law, had the right to extend its spur track·across the main line of the other railroad. *R. R. v. R. R.*, 165 N. C., 425; *s. c.*, 161 N. C., 531.

R. R. *v.* MANUFACTURING CO.

It is impossible that the defendant can actually sustain the damages capitalized on the above basis, since it deemed it an advantage and not a detriment to locate its plant on the line of the Southern Railway with its main building and many of its tenant houses much nearer to the track of that railroad than to the track laid down by this plaintiff.

The right of eminent domain is granted because the public interest requires that private property shall be taken for public use under the circumstances and in the manner prescribed by law. The owner is entitled as compensation to the actual and direct damages which he may sustain by being deprived of his property. These damages are limited to those which embrace the actual value of the property taken and the direct physical injuries to the remaining property. In the present case the nearest part of the defendant's mill building to the plaintiff's track is 357 feet. There are only seven houses that are wholly or partly on the right of way, three of which were moved at the plaintiff's expense to make room for the track, and all seven have remained continuously in the use and occupation of the defendant's operatives, who pay weekly rent therefor. There is no evidence tending to show that the operation of plaintiff's road has interfered mechanically or physically with the operation of the defendant's machinery, or damaged or injured its product, nor that the vibrations of the train, smoke, noise, dust, or escaping steam have interfered in any way with the mechanical and manufacturing processes of the defendant, nor that it has even lost any of its operatives by reason of the location of the plaintiff's track, nor been forced to pay higher prices to its operatives nor hire inferior hands for that cause; though we would not be understood as saying that the latter would be ground of damage, if shown.

The defendant contends that the difference in value of the whole tract of 20 acres before the condemnation for the right of way and afterwards is an item of damage to be assessed by the jury. This proposition is condemned, 2 Lewis Em. Dom., sec. 706, p. 1232: "It is said in some cases that it is proper to consider every element of damages which would be taken into con-

sideration in a sale between private parties. But this needs some qualification, since remote and speculative reasons are often urged by the seller in support of the valuation claimed."

This point is clearly stated in *Simons v. R. R.,* 128 Iowa, 152 : "The trial court told the jury that it was proper for them to take into account every element of annoyance and disadvantage resulting from the construction of a railroad which would influence an intending purchaser in making an estimate of the market value of the plaintiff's property. This we think was error, in that it led the jurors into an unlimited field of conjecture and speculation. It furnished no rule for the assessment of damages and gives no certain test for ascertaining the market value. It left the matter open to the caprices and whims of each individual juror."

In the leading case of *R. R. v. Wicker,* 74 N. C., 220, the judge below told the jury that in assessing damages they might consider the possibility that cattle might be killed on the road, and that the landowner was entitled to have this element considered. This Court said : "The answer to this is that the danger that the cars may injure cattle without negligence, and consequently without liability to an action, is not peculiar to the landowner, a part of whose land is taken. It is common to all who own cattle near the line of the road, whether a part of their land is taken for the road or not. It is clear that those persons no part of whose land is taken cannot recover anything for this danger of possible loss, and as the defendant is not required to abate the damage proper to him by reason of any benefits which he may derive from the road in common with the whole neighborhood, so he is not entitled to be compensated for any damages which are in like manner common to all, such as this we are considering, or such as may arise from smoke, noise, etc. In *Presbytery v. R. R.,* 103 Mass., 1, and *R. R. v. Helm,* 8 Bush (Ky.), 681, the Court says : 'Such depreciation is not occasioned directly by any effect upon the land of which the construction or the maintenance of the railroad is the cause. It belongs to that class of results which necessarily arise from the exercise of the franchise granted to such corporation in consid-

eration of the general advantage which the whole community are expected to derive from it. The annoyances to the landowner are the same in kind with those which are suffered by the whole community.' "

We do not think that the defendant was entitled to have the entire mill village and plant on this 20-acre tract of land valued, and to deduct from it the supposed value of the entire tract after the new railroad was laid down. This is too speculative, and would admit of the consideration of the above alleged causes of damage, which are not a part of the damages to the land by the loss of the right of way, and would take into consideration elements of annoyance and inconvenience which the defendant would suffer in common with the community or which are necessarily incident to the exercise of the right of eminent domain. The defendant is not entitled to have considered the possible injury to persons or property by reason of the operation of the railroad, nor possible danger from exposure to fire (for all which it would be compensated if caused by plaintiff's negligence), nor for the effect, if any, upon the employment of help by reason of their apprehension of danger and the possible increase of wages, nor the alternative of employing inferior labor caused by such fears. These matters, if they exist, are *damnum absque injuria,* and if allowable would call for similar compensation for more or less speculative damages to every landowner along the line of every railroad, and would make the construction of railroads well-nigh impossible.

These incidents, if they exist, are common to the public, and the defendant must bear them as its due to the sovereignty of the State, which takes the property for public use. On the other hand, in assessing damages the railroad company is not allowed to offset any general benefits which may accrue to the landowner in common with the public at large by reason of the construction of the road. The construction of this railroad will doubtless enhance the prosperity of Charlotte and the value of property there and all along the line of the road, including necessarily the value of defendant's property. The plaintiff is not allowed to deduct this general benefit which the defendant

will receive, and the plaintiff cannot be charged with the remote though possible damages which the defendant may incur for the causes claimed by it.

The defendant is entitled to have assessed the value of the land taken for the right of way and any injury done to the remaining part of the land, if any, by way of special damages, such as impairing the physical and mechanical operation of its plant by vibrations and smoke, if there is evidence of such direct injury. But the defendant cannot go any further than this.

The defendant relies upon *R. R. v. Church,* 104 N. C., 529, where a railroad condemning a right of way running through the grounds of a country church at which the attendants were in the habit of hitching their horses, was required to pay the depreciation in the value of the property caused by the interference with church worship in distracting the attention of the worshipers, scaring the horses and driving the people away from the church. But this was the direct damage to the value of the plant by interfering with its use for the purposes for which it was established. In this case there is no such direct interference with the use of the plant. There is no oscillation or other interference with the use of the machinery, and indeed the mill building is much nearer to the track of another railroad, and was located there for greater convenience.

In *Brown v. Power Co.,* 140 N. C., 333, the landowner had a spring on her land and some bottom-lands which abutted on the river. The spring was submerged and destroyed by the backing of the water, which also interfered with her working the bottoms. The Court held that she was entitled to damages for the physical injuries to the land and the depreciation of its value by reason of its being covered by the backwater, but said that she was not entitled to any sentimental damages by reason of her peaceful and happy condition being disturbed by reason of losing her spring of good water and the support she had made on her bottom-lands; that the march of progress and the demands of a large city for water and lights required the taking of her property, and for this she was entitled to pecuniary compensation. But she was not allowed damages for the inter-

ference with her peaceful and idyllic condition, nor for the supposed unhappiness resulting therefrom, or the unhealthiness which she thought would be caused by the ponding water.

In *Lambeth v. Power Co.,* 152 N. C., 371, the judge below charged the jury: "You cannot allow anything as damages based upon unknown or imaginary contingencies or events, or such as may not reasonably and naturally be expected to occur to the plaintiff—not to other persons—from the construction, operation, and maintenance of defendant's line for the uses for which it was constructed." This Court, commenting upon this charge, says: "The entire charge is an admirable instruction upon the law governing the assessment of damages in cases of this character," and cites many cases.

To the same effect, requiring the jury to restrict the damages to such as are direct and apparent from the evidence, and to disallow those which are remote and speculative, can be cited numerous cases. In *Stone v. R. R.,* 68 Ill., 396, the Court says: "The difficulty of crossing a railroad track, the detention by trains, the frightening of horses, the danger to persons crossing the track, the noise of the trains, and various other things that might be named, are inconveniences which property owners on a street where a railroad is located have to suffer; yet to hold that such could recover damages would, in effect, prevent the construction of a railroad upon a public street." Civilized man cannot have all the conveniences of civilization without any of its inconveniences.

A most illuminating case is *Austin v. R. R.* (Ga.), 47 L. R. A., 755, which holds that the damages recoverable are only such as arise from "some physical interference with property, or physical interference with a right or use appurtenant to property; and therefore a railroad company is not liable to the owner of real property for diminution in the market value thereof resulting from the making of noise or from the sending forth of smoke and cinders in the prosecution of the company's lawful business which does not physically affect or injure the property itself, but merely causes personal inconvenience or discomfort to the occupants of the same." In this case and the notes thereto many others are cited.

166—12

In *Becker v. R. R.* (177 Pa., 252), 35 L. R. A., 583, it is held that "diminished value of a stock of merchandise because of removal rendered necessary by the taking of real estate is not an element of damages in such proceedings." In *McReynolds v. R. R.,* 106 Ill., 100, the Court excluded as an element of damage the danger of crossing the track with teams and the danger to children and members of the family by reason of a farm being bisected with a railroad track, though it allowed damages for the inconvenience of carrying on the farm work from that cause. The latter was direct and ascertainable. The other was remote and conjectural. For the same reason, in *R. R. v. Hammers,* 51 Kan., 127, the Court excluded alleged damages for the frightening of stock, as speculative and consequential. To the same purport, *R. R. v. Lyon,* 24 Kan., 745; *R. R. v. Mason,* 26 Ind. App., 395.

In *R. R. v. Johnson,* 18 Mass., 62, the Court excluded an expected loss of business as too remote and consequential to be allowed in estimating damages to real estate on which it is conducted. Danger of fire from passing locomotives was held too remote to be considered in estimating compensation. *Lance v. R. R.,* 57 Iowa, 636; *Connors v. R. R.,* 93 Ill., 464; *R. R. v. Freeman,* 210 Ill., 270.

Most of the above and many other cases are cited in the plaintiff's brief, and many others might readily be added.

Nor do we think that the opinion of cotton manufacturers as to possible deterioration in the value of mill property by the opening up of a railroad is a matter of art or science which justifies or admits expert testimony. It is a matter as to which other persons are as competent to form an opinion as they, depending upon their observation and intelligence, which of course are to be weighed by the jury. While the valuation of land is necessarily largely one of opinion, it is not a matter of expert evidence. We must take the opinion of those who know the property in question and the value thereof. What effect the building of a railroad may have upon one plant, under of course different circumstances, can have no weight in fixing the

R. R. *v.* MANUFACTURING CO.

value of the land taken under condemnation in another case where the witness has no personal knowledge of its value.

If the issue here involved had been as to how much cloth a bale of cotton would produce, or the number of pounds of dye-stuff required to dye a given quantity of yarn, or other similar · questions, these manufacturers could from their experience have been of assistance to the jury with their expert testimony; but it is not so as to the valuation of land, as to which we must depend, not upon expert testimony, but upon the personal knowledge of those who know the land in question and can thus form an opinion as to its value from their own knowledge.

For the errors stated, the verdict and judgment in the plaintiff's appeal must be set aside, and the damages will be assessed on another trial in accordance with the views herein expressed.

Error.

DEFENDANT'S APPEAL.

CLARK, C. J: This is a proceeding for the condemnation of a right of way 100 feet in width through the mill village of the defendant, near the northeast limits of Charlotte. The defendant owns some 43 tenant houses, rented to its operatives, the rent being payable weekly. It became necessary for the plaintiff, in order to effect an entrance into Charlotte, to acquire a right of way through the defendant's property of some 20 acres. The clerk found as a fact: "It is necessary for the petitioner to have a right of way over the lands described in the petition." This finding of fact was not excepted to by the defendant. Upon the hearing of the appeal in the Superior Court, the judge found as a fact: "It is necessary for the petitioner, in order to construct, maintain, and operate its railroad, that it shall condemn a right of way over said 100-foot strip." The defendant did not except to this finding of fact. So it is settled that the plaintiff is entitled to have this 100-foot strip as a right of way over the lands of the defendant through its mill village, according to the petition and plat.

On the right of way of the plaintiff, as asked for and located, there were situated wholly or partly seven tenant houses, four

of which remain untouched and the other three were moved by the plaintiff, at its own expense, to make room for the track, to other locations partly on and partly outside the right of way. All of the seven houses, including the three which were removed and the other four, have been at all times and still are occupied by the tenants of the defendant. The houses have not become the property of the plaintiff, the tenants have the right to live in them, and are still living in them, and can continue to do so until they shall become, if ever, actually needed for railroad purposes. *R. R. v. Sturgeon,* 120 N. C., 225; *R. R. v. Shields,* 129 N. C., 1.

The defendant contends, however, that its land is not subject to condemnation, because Revisal, 2578, provides: "No such corporation shall be allowed to have condemned to its use without the consent of the owner *his dwelling-house,* yard, kitchen, garden, or burial ground." This section is an exception to Revisal, 2575, which confers broadly the right of condemnation. His Honor properly held that Revisal, 2578, does not exempt all dwelling-houses, but only the dwelling-house of the owner of the land sought to be condemned, and did not apply to cases like the present, where the tenant houses are merely appurtenances in the operation of the plant.

The exercise of the power of eminent domain is an attribute of sovereignty, under which, upon considerations of the greater benefit to the public, private property is taken for public use. "A dwelling-house is, of itself, no more exempt from condemnation for public uses than any other property." Mills Em. Dom. (1888), sec. 120. The dwelling-house of the owner, his yard, garden, and burial ground are exempt only because the statute so provides. Revisal, 2578, does not purport to exempt all dwelling-houses, or dwelling-houses generally. It expressly limits the exemption to the "owner's dwelling-house." There is no room for construction. No corporation "can have condemned, without the consent of the owner, *his dwelling-house.*" The exemption from the taking of private property for public use upon compensation is not conferred upon the landowner's tenant houses, nor his tenants' dwelling-houses, nor upon defend-

ant's 43 tenant houses occupied by tenants who pay weekly rent, but such exemption is confined to the *"owner's* dwelling-house." This proceeding is to condemn the land of the defendant. Its tenants, holding by the week, are not parties to this action, and have no interest in the land to prevent its condemnation by the State for a public use.

The evident intent of this legislation was to exempt the family home, rendered sacred by sentiment or the local attachment of the owner. The defendant is a corporation, and has no dwelling-house. These tenements can have no sentimental value to the defendant corporation. It has doubtless a place of business, a principal office, but it does not have a "dwelling-house," a home, nor has it ability to live in 43 dwelling-houses. A corporation can have no property the value of which cannot be measured in money, for it has no sentiment and no affections.

A case almost exactly in point is *R. R. v. Mosely,* 117 La., 314, in which the Court held that the almost identical wording of Article 2637 in the Civil Code of that State was "intended to be applied in cases where citizens are disturbed in their homes, and not in cases where the property consists of tenements which are rented from month to month to any one who may choose to take them." The present case is really stronger, because here the owner is a corporation who can have no "dwelling-house," while in that case the occupant of the tenant house was an individual, but not the owner of the land sought to be condemned, and he therefore had no property right therein as against the exercise of the power of eminent domain.

"Statutes exempting a dwelling-house and land within 60 feet thereof apply only to land belonging to the owner of the dwelling-house, and in such cases land of another within 60 feet of such dwelling is not exempt." *R. R. v. Wicker,* 13 Gratt. (Va.), 375. In *Lansing v. Caswell,* 4 Paige (N. Y.), 522, the Court held that the "garden or yard, or inclosure, does not exempt every yard or inclosure, but only such as are necessary to the use and enjoyment of the dwelling-house, and cites with approval *Clark v. Phelps,* 4 Cowen, 190.

R. R. *v.* Manufacturing Co.

The Pennsylvania statute is very slightly different from ours, and forbids the taking "without the consent of the owner of his dwelling-house." It was held that this was only another way of saying "the dwelling-house occupied by the owner." *Hagner v. R. R.,* 154 Pa., 475.

The only other exception on this appeal is that the court did not allow interest on the amount of damages from the date of the condemnation of the right of way, but only from the date of the verdict and judgment. In this there was no error. Revisal, 1954, provides that all sums of money due by contract, except on penal bonds, shall bear interest. But judgments in other cases than on contract bear interest only from the date of the judgment. At common law a judgment did not carry interest when an execution was issued upon it. The statute was passed for the purpose of amending the law in this respect. *Collais v. McLeod,* 30 N. C., 221, cited *McNeill v. R. R.,* 138 N. C., 4. The cause of action here does not arise on contract, but is for damages on account of defendant's land taken under the right of eminent domain. These damages fall directly under Revisal, 1954, and the law gives interest only from the rendition of the judgment.

The defendant did not contend on the trial that it was entitled to interest before judgment, and did not request the court to so instruct the jury. It is true that the jury in awarding damages could in their discretion have given interest as a part of the damages if the circumstances seemed to them to justify it. But the court was not asked so to charge, and here the circumstances would not have justified the allowance of interest. It is found as a fact herein that none of the defendant's seven houses have ever been vacated, but at all times since the condemnation they have been occupied by the tenants of the defendant. There is no evidence that the rent has been reduced or that any tenant has failed to pay his rent promptly. The defendant was not receiving any revenue from the land taken except the rent of the seven houses, which he is still receiving, and has therefore sustained no loss in income. Under the *Sturgeon case* above cited, this condition will continue indefinitely

R. R. *v.* MANUFACTURING CO.

unless the railroad shall actually need the land now covered by the houses, which is very improbable, as the track has been laid and is now in daily use.

In *R. R. v. Balthaser,* 119 Pa. St., 473, the Court said : "The lapse of time between the happening of an injury and the trial is a proper subject to be considered by the jury in making up the amount of damages for which to render verdict, but interest as such is not recoverable in action *ex delicto.* In actions where a definite sum of money is demandable as a debt, interest at the legal rate is a matter of right, and the jury properly can be directed to include it in their verdict ; but actions brought to recover unliquidated damages for a wrong done proceed upon a different basis. The nature of the wrong, the attending circumstances, and the time when it was committed are all for the jury, and may be properly considered in the adjustment of the amount of the verdict." This case has been cited with approval, *Klager v. R. R.,* 160 Pa. St., 386. Another case directly in point is *Fowler v. R. R.,* 113 Mo., 458. Indeed, the principle is well recognized.

In *Stephens v. Koonce,* 103 N. C., 269, which was an action for damages for conversion, the Court held that in an action for damages not arising on contract the allowance of interest is a question for the jury to determine, and when they have not allowed it in their verdict the judgment bears interest only from its date. This is cited with approval in *Lance v. Butler,* 135 N. C., 423. In *Williams v. Lumber Co.,* 118 N. C., 928, it was held that where damages were assessed upon a judgment by default and inquiry, "It was error to add any interest for the time elapsed prior to the verdict, as interest, if it should be allowed, is presumed to have been included by the jury in the amount of their verdict."

In the defendant's appeal we find

No error.

WALKER, J., dissenting : In the defendant's appeal, I am unable to agree, with my brethren, that the expression in the statute exempting from condemnation the dwelling-house, yard,

kitchen, garden, or burial ground is confined solely to the man-sion-house, and does not protect the humble cottage or the hut, if it happens to be occupied by a tenant unable; by reason of his poverty, perhaps, to own his own home in fee. I do not think this was intended by the Legislature, nor that such a construc-tion is at all warranted by its language. The purpose was to shield the home itself, without regard to who may occupy it, from the hostile invasion. What difference should it make that it is the dwelling of a tenant? It is as much a wrong in the one case as in the other to condemn the home, and more oppres-sive, generally, in the case of a tenant. When the Legislature provided that "No corporation shall be allowed to have con-demned to its use, without the consent of the owner, his dwell-ing-house, yard, kitchen, garden, or burial ground," it used the word "his" as a possessive pronoun, and the phrase clearly means that without his consent no dwelling, etc., *belonging to him* shall be condemned. Surely, it will not be contended that there is any good reason for making such a distinction between the landlord and the tenant, to the disparagement of the latter. The Legislature is supposed to be just, and to distribute its favors equally among those entitled to them and coming within the same class.

None of the cases cited by the Court sustain its view.

In the Louisiana case the houses had not been occupied, but were held merely as an investment. In *Hagner v. R. R.,* 154 Pa. St., 475, the statute required, as appears by the opinion, the personal occupation of the owner, and the party resisting con-demnation had entered fraudulently to prevent it. The Court said in regard to these facts: "A mere recital of the facts in this case convinces us that the occupancy was but a scheme to defeat the railroad construction on the proposed line. . . . A dwelling-house under such circumstances is not in the contem-plation of the law a 'dwelling-house in the occupancy of the owner.' The Legislature means to protect the man who owns his land and occupies it in good faith. Their protection cannot extend to the man who becomes an occupant for the mere pur-pose of defeating public improvement or for the purpose of ex-

torting excessive compensations. Such an occupancy, instead of being honest, is fraudulent. Mills on Eminent Domain, sec. 120. We conclude that, as between the plaintiff and defendant corporation, the house in question was not a dwelling-house *in the occupancy of the owner."* Our statute and that one are differently worded.

Of course, as said in the Court's opinion, the Legislature may refuse to exempt a dwelling-house and its curtilage, as the whole matter is entirely within its power; but it has not done so.

The cases of *R. R. v. Micker,* 13 Grattan (Va.), 375; *Lansing v. Caswell,* 4 Paige (N. Y.), 52, and *Clark v. Phelps,* 4 Conn., 190, it is evident, do not touch the question. They merely define what is the curtilage and its extent. But there is direct authority for the position that the house occupied in good faith by a tenant is exempt from condemnation. The immunity embraces both mansion-house and tenement.

In *R. R. v. Pack,* 6 W. Va., 397, the Court had under consideration this very question, the statute being identical with ours, and it was held, at p. 405: "There is no sufficient reason, by construction, to restrict it so that it will apply only to dwelling-houses and lands occupied by the owner himself, in fee, but not to such as are occupied by a tenant for any less estate. The provision must, therefore, be deemed sufficient to protect, not only the former, but as well the latter class of property." This doctrine is accepted as the true one and approved by the author in 15 Cyc., p. 605, in these words: "A *bona fide* occupancy by a tenant will, however, entitle the owner (of the dwelling) to the exemption." There are no well-considered cases to the contrary, that I have been able to find.

But the question may be considered from another standpoint. The authorities uniformly hold that "the word 'owner,' as used in the statute, applies to all persons who have an interest in the estate." *Gerrard v. R. R.,* 14 Neb., 270. It is quite obvious that the statute does not use the word "owner" in the sense of the holder of the legal title, but in the sense of one having, at the time of condemnation, the control of it, which would include a tenant. *Tompkins v. R. R.,* 21 S. C., at page 431.

Mills, in his work on Eminent Domain (2 Ed.), sec. 65, under the title, "What persons are considered as 'owners,'" says: "In the land or property taken there may be various interests, in different individuals. The entire value of the land is all that can be awarded to the several owners, and no contracts between the owners can oblige the public to pay more than the entire value of the land as a whole. In settling the damages between the owners, the situation and manner of the occupation should be considered. Among the various titles and interests recognized as entitled to compensation as owners are lessees and landlords, mortgagors and mortgagees, mortgagees of leaseholds, etc. . . . The term 'owner' includes all persons who have an interest in the property. Damages are to be assessed to every owner, although no claim may have been made." It may be taken as settled by the decisions not to be necessary that the owner in fee in the dwelling-house should actually occupy it to protect it from condemnation, and that the word "owner," within the meaning of the statute, applies to and includes a tenant, as well as the owner of the fee. This was expressly held in the case of *Lister v. Lobley,* 7 Adol. and E., 124, where it was said, in construing a similar statute: "The word 'owner' means the tenant for the term, and not necessarily the owner in fee simple." See, also, to same effect, *R. R. v. Walker,* 45 Ohio St., 577; *Parker v. R. R.,* 79 Minn., 372; *Proctor v. R. R.,* 64 Mo., 112; *Shott v. Harvey,* 51 Am. Rep., 201; *Gilligan v. Providence,* 11 R. I., 258; *Choteau v. Thompson,* 2 Ohio St., 114; *Higgins v. San Diego,* 131 Cal., 294. In all the above cited cases it is held that the word "owner" is sufficient to include a tenant or other person in possession having any less estate or interest in the property than a fee.

As to parties and those who should be notified, 15 Cyc., p. 844, says: "All persons having any interest in the lands proposed to be taken are entitled to notice. A lessee' is entitled to notice as well as the owner." *Board of Levee Comrs. v. Johnson,* 66 Miss., 248.

It is true that the plaintiff cannot be said to be actually living in the houses, but that is not required. There were seven of the

houses on the right of way, as I understood the record, and the plaintiff was occupying them constructively by his tenants. Besides, the tenants are to be considered personally as the "owners," for they had an estate, well known in the law, in them, and were in actual occupation of the premises. The Legislature did not regard the character of the *owner,* whether a natural or an artificial person, but only the person occupying the house, whether as owner in fee or tenant, deeming the one as much entitled to protection against invasion of his private premises as the other; and this is the just and proper view to be taken of the subject. In any view to be taken of the question, these houses were dwellings within the protection of the clause exempting them from condemnation. It can make no difference that the houses are now standing on the right of way and occupied by the tenants, or that three have been removed. Plaintiff had no right to interfere with them at all, and was a trespasser when it did so (*Fore v. R. R.,* 101 N. C., 526), as the law had forbidden it.

On this branch of the case I dissent, as I believe the uniform decisions of the Court sustain my view, and it is fully sanctioned by my sense of justice and right. I concur in other respects.