## INCORPORATED TOWN OF SALLISAW v. PRIEST.

No. 6420.—Opinion Filed July 25, 1916.

Rehearing Denied Sept. 26, 1916.

(159 Pac. 1093.)

### 1. Eminent Domain—Proceedings—Measure of Damages.

The measure of damages in condemnation proceedings where private property is taken in the exercise of the right of eminent domain under the statutes of Oklahoma is the market value of the property actually taken, at the time it is so taken, and for the impairment or depreciation of value done to the remainder. And in ascertaining the amount of damages it is proper, among other things, to consider the inconvenience and annoyance likely to arise in the orderly exercise or conduct of the enterprise which interferes with the use and proper enjoyment of the prop-

erty by the owner and which sensibly impairs its value.

### 2. Condemnation—Evidence.

It was not error in an appeal from an award of commissioners in a condemnation proceeding to admit testimony relating to the effect of the location and orderly operation of the enterprise for which the land was taken, as they existed at the time of the trial. The jury are not confined to the consideration of the facts as they existed at the time the land was taken, but may consider the subject in the light of the facts as they exist at the time of the trial.

### 3. Evidence—Opinion Evidence—Value of Land.

"The question of the value of property does not ordinarily involve a question of science or skill upon which only an expert possessed of technical training can speak; and where the value of farming land is in issue intelligent persons living in the vicinity of the property involved who are acquainted with the market value of similar property in the locality and of the particular property in question may give their opinion as to its value."

### 4. Appeal and Error—Discretion—Opinion Evidence—Qualification.

The question of opinion evidence is addressed very largely to the sound discretion of the trial court, and its ruling that the witness is sufficiently qualified will not ordinarily be disturbed unless it clearly appears that this discretion has been abused.

### 5. Eminent Domain—Condemnation Proceedings—Damages—Evidence—Sufficiency.

The damages assessed by the jury were not excessive under the proof.

(Syllabus by Hayson, C.)

Error from District Court, Sequoyah County; John H. Pitchford, Judge.

Condemnation proceedings by the Incorporated Town of Sallisaw, Okla., against John F. Priest. Judgment for defendant, and plaintiff brings error. Affirmed.

J. H. Jarman and Curtis & Pitchford, for plaintiff in error.

Luther Kyle and McCombs & McCombs, for defendant in error.

Opinion by HAYSON, C. This was a proceeding instituted by the incorporated town of Sallisaw, Okla., to condemn certain land for the purpose of locating the septic tank and disposal plant for its sewer system; said land being owned by John F. Priest defendant in error. From the appraisement made by the commissioners appointed by the court to appraise the land John F. Priest, defendant in error, filed his objections, and demanded a trial by jury for the purpose of assessing the damages to his property. The cause came on for trial in the district court of Sequoyah

county, and the jury returned a verdict for defendant in error for the sum of $2,000. From the judgment and order overruling the motion for new trial the incorporated town of Sallisaw, Okla., plaintiff in error, appeals, setting up eight assignments of error.

From a complete and thorough examination of the record, and the authorities applicable, we conclude that all the assignments of error are without merit. They will be taken up and considered as follows: First, the second assignment of error; second, the third and fourth assignments of error; third, the sixth and seventh assignments of error; and, fourth, the first and eighth assignments of error. The fifth assignment of error is wholly without merit and will not be discussed.

In the second assignment of error the plaintiff in error complains of the following instruction given by the trial court and excepted to by plaintiff in error:

"Gentlemen of the jury, you are instructed that the measure of damages in this case is the fair market value of the land of the defendant actually taken by the plaintiff at the time taken, and the actual damages, if any, to the crops growing on said lands of defendant, if any were so growing, caused by the plaintiff in carrying out the purposes for which said land was taken, as shown by the evidence, and also the difference, if any, in the fair market value of the remainder of defendant's farm as a whole just before and just after the locating of the sewerage tank and other improvements placed thereon by the plaintiff, as shown by the testimony. The value of the land taken and the depreciation in the market value of the remainder, and the value of the crops destroyed and injured, if any, added together constitute the compensation of damages to which defendant, Priest, is entitled in this procedure."

The instruction is substantially correct, and is sustained by the great weight of authority. The only element the court might have included in the instruction which was omitted was that the jury should not consider any benefits derived from the location and operation of the enterprise for which the land was taken, but, as there is no contention in this case that the land was benefited by the location and operation of such enterprise, the instruction as given is substantially correct.

In Blincoe v. Choctaw, Oklahoma & Western Railroad Co., 16 Okla. 286, 83 Pac. 903, 4 L. R. A. (N. S.) 890, 8 Ann. Cas. 689, in commenting upon an instruction very similar to the one under consideration the court quoted with approval the following excerpt from the case of the Grand Rapids R. R. Co. v. Chesebro, 74 Mich. 474, 42 N. W. 69:

"The damages in such a case must be such as to fully make good all that results, directly or indirectly, to the injury of the owners in the whole premises and interests affected, and not merely the strip taken"—citing a large number of authorities, among them Grand Rapids & I. R. Co. v. Heisel, 47 Mich. 393, 11 N. W. 215.

To the same effect are the following cases: Chicago, Rock Island & Pacific R. R. Co. v. Hock, 118 Ill. 587, 9 N. E. 205; Hannibal Bridge Co. v. Schaubacher, 57 Mo. 582; Kansas City, E. & S. R. Co. v. Merrill, 25 Kan. 421; Revell v. City of Muskogee, 36 Okla. 529, 129 Pac. 833; Idaho-Western R. Co. v. Columbia Conference of E. L. A. S., 20 Idaho, 568, 119 Pac. 60, 38 L. R. A. (N. S.) 479; Raleigh, C. & G. R. Co. v. Mecklenburg Mfg. Co., 166 N. C. 168, 82 S. E. 5, L. R. A. 1916A, 1097; Arkansas Valley & W. R. Co. v. Witt, 19 Okla. 262, 91 Pac. 897, 13 L. R. A. (N. S.) 237.

In the third and fourth assignments of error plaintiff in error states that the trial court erred in permitting the introduction of testimony pertaining to the unsanitary condition of the septic tank or disposal plant, and in permitting the introduction of testimony with reference to the alleged effect at the disposal or outfall from the disposal plant upon the water in the creek or branch below said plant, all of which was done over the objection of the plaintiff in error. These assignments, in view of the record in this case, are both without merit. The court properly instructed the jury as to the measure of damages and as to the time such damages were to be assessed. The evidence pertaining to the effect or results of the orderly operation of the septic tank and disposal plant up to the day of the trial was proper evidence for the jury to consider in determining what damages, if any, the defendant in error sustained to the remainder of his farm by reason of the location and orderly operation of the septic tank and disposal plant. The evidence in this case clearly establishes that on the land taken by plaintiff in error there was located a living spring of water which flowed across the land of defendant in error. Just what damages the defendant in error would sustain by reason of the location and operation of the septic tank and disposal plant at the time the appraisers made the appraisement was largely a matter of speculation. The appraisers may have overestimated it, or may have underestimated it. But at the date of the trial, when the plant was in complete operation, and, as the evidence discloses, had been in operation for some time, the detriment to the remainder of the farm of the defendant in error, if any, was no longer a matter of speculation, but

was a matter that could be clearly ascertained from the testimony of witnesses produced before the jury. This view of the law is sustained by ample authority. In the case of Arkansas Valley & Western Railway Co. v. Witt, reported in 19 Okla. 262, 91 Pac. 897, 13 L. R. A. (N. S.) 237, the court quoted with approval excerpts from the following cases:

"In Haynes v. Ottawa, Oswego & Fox River Valley R. Co., 54 Ill. 373, the court says, in estimating the damages and benefits to result from the construction and use of a railroad over land which has been condemned for that purpose under an act of 1852, the jury are not confined to the consideration of the state of facts as they existed at the time the land was taken, but may consider the subject in the light of the facts as they exist at the time of the trial.

"In St. Louis, O. H. & C. R. v. Fowler (142 Mo. 670) 44 S. W. 771, the Supreme Court of Missouri say: 'The damages and benefits to the remaining land after an appropriation of a railroad right of way should be estimated according to the condition of things, and the rights of the parties as they exist at the trial.'

"In Wichita & W. R. Co. v. Kuhn (38 Kan. 104) 16 Pac. 75, the Supreme Court of Kansas say: 'On an appeal from an assessment of damages done to a farm by reason of the appropriation of a right of way through it by a railroad company, and where it is shown at the time of the trial that the railroad is completed across the farm, it is then competent and proper to assume that the railroad was constructed as contemplated at the time of the condemnation proceedings, and all damage that is apparent which will result to the injury of the farm, such as stopping the flow of surface water, forming stagnant pools along the side of or along the right of way, and the like, are elements of damage proper to go to the jury.'

"In Springfield & Memphis Ry. Co. v. Rhea 44 Ark. 258, the court says: 'Where an assessment of damages for right of way proceeds the building of a railroad, the presumption is that it will be built with skill and proper precaution; but, if the road has been completed through the land at the date of the trial, the jury may consider the state of facts that existed, and from the light of the actual construction determine what the damage has been, embracing all past, present and future damages which the location of the road may reasonably produce'."

With reference to the scope of the evidence in this class of cases, Garber, J., in this case, 19 Okla. 262, 91 Pac. 897, 13 L. R. A. (N. S.) 237, lays down this rule:

"In determining the damages to private property caused by the exercise of the right of eminent domain for a right of way for railroad purposes, testimony showing the excavations, embankments, and obstructions to the natural flow of surface water necessarily caused by the construction of the road is properly admitted for the purpose of showing in what way and to what extent the remaining portion of the uncondemned tract has been damaged by reason of the construction of the road."

Also:

"Under the statutes of Oklahoma, damages in condemnation proceedings for railroad right of way purposes are not limited to the real estate taken and injured, but may be such damages as the owner actually sustains to either his real or personal property by the appropriation of his land and by reason of such railroad."

To the same effect are the following cases: St. Louis, El Reno & Western Railway Co. v. Oliver et al., 17 Okla. 589, 87 Pac. 10, Ann. Cas. 748; Blincoe v. Choctaw, Oklahoma & Western Railroad Co., 16 Okla. 286, 83 Pac. 903, 4 L. R. A. (N. S.) 890, 8 Ann. Cas. 689; Revell et al. v. City of Muskogee, 36 Okla. 529, 129 Pac. 833; Wichita Falls & N. W. Ry. Co. v. Munsell, 38 Okla. 253, 132 Pac. 906; Brown v. Weaver Power Co., 140 N. C. 333, 52 S. E. 954, 3 L. R. A. (N. S.) 912; Idaho-Western Railway Co. v. Columbia Conference of Evangelical Lutheran Augustana Synod et al., 20 Idaho, 568, 119 Pac. 60, 38 L. R. A. (N. S.) 497; Cleveland, Cincinnati, Chicago & St. Louis Railway Co. v. Hadley et al., 179, Ind. 429, 101 N. E. 473, 45 L. R. A. (N. S.) 796; McLaughlin v. City of Hope, 107 Ark. 442, 155 S. W. 910, 47 L. R. A. (N. S.) 137; Raleigh, Charlotte & Southern Railroad Co. v. Mecklenburg Manufacturing Co., 166 N. C. 168, 82 S. E. 5 L. R. A. 1916A, 1079.

There being no contention by plaintiff in error that the septic tank and disposal plant was not at all times conducted in an orderly manner up to the date of the trial, we must assume in the light of the authorities that they were conducted by the plaintiff in error in such manner as was contemplated at the time the land was condemned.

In the sixth and seventh assignments of error the plaintiff in error claims that the trial court erred in permitting several witnesses to testify as to the value of the farm from which the land condemned was taken without requiring such witnesses to show themselves qualified to give such testimony, and that the trial court erred in refusing to strike such testimony of such witnesses. Upon a careful examination of the record, in the light of the decisions of our own court, and the great weight of authority, we find no error was committed by the trial court in his rulings relative to the testimony of such witnesses. These witnesses were all farmers. All testified in their direct testimony that they were acquainted with the land in question and the market value of land in that

vicinity. While it is true that under the skillful cross-examination of counsel for plaintiff in error some of these witnesses seemed to contradict their direct testimony in some particulars, yet they come squarely within the rule as announced in the following cases, and the weight of their testimony became a question for the jury: Wichita Falls & N. W. Ry. Co. v. Harvey et ux., 44 Okla. 321, 144 Pac. 581; Wichita Falls & N. W. Ry. Co. v. McAlary, 44 Okla. 326, 144 Pac. 583; Idaho-Western Railway Co. v. Columbia Conference, etc., 20 Idaho, 568, 119 Pac. 60, 38 L. R. A. (N. S.) 497; Raleigh, C. & S. R. Co. v. Mecklenburg Mfg. Co., 166 N. C. 168, 82 S. E. 5, L. R. A. 1916A, 1079.

As it does not appear there was any abuse of discretion upon the part of the trial court with reference to his rulings on the testimony of these witnesses, his rulings thereon will be permitted to stand.

In the first and eighth assignments of error, in which it is claimed the trial court erred in overruling the motion for a new trial filed by the plaintiff in error, setting out a large number of reasons therefor, we will discuss but one; i. e., "that the damages assessed were excessive." There was much conflict in the testimony. The jury might, under the evidence have assessed the damages anywhere from $300 to $15,000, but assessed the damage at $2,000. There is ample evidence to sustain the verdict, and from the record in the case we cannot say the damages assessed are excessive, and the verdict will not be disturbed.

By the Court: It is so ordered.