**STATE of Texas, Appellant,**

v.

**Robert Baxter CHILDRESS et ux.,
Appellees.**

**No. 3502.**

Court of Civil Appeals of Texas.

Eastland.

Dec. 4, 1959.

Rehearing Denied Jan. 8, 1960.

Will Wilson, Atty. Gen., W. Ray Scruggs, Asst. Atty. Gen., for appellant.

McMahon, Smart, Sprain & Wilson, Abilene, for appellees.

COLLINGS, Justice.

This is a condemnation suit. The State of Texas, as plaintiff, condemned 21.664 acres of land belonging to Robert Baxter Childress and wife, Mary Page Childress, for right of way purposes for Interstate Highway number 20, and also three small

tracts as drainage easements. Both parties appealed from the award of the commissioners which was in the sum of $14,615. Upon a trial in the County Court at Law, defendants admitted plaintiff's right to condemn the land and assumed the burden of proof. The judgment based upon answers of the jury to special issues was for the sum of $39,135.75. The condemned land was out of a 99.6-acre tract, the larger portion of which was located in the corporate limits of the City of Abilene, and in the northwest part thereof. The land was rectangular in shape except for a panhandle extending in a westerly direction from the northwest corner. The right of way as platted entered the Childress property at its northeast corner and ran diagonally in a southwesterly direction, leaving the property near the midpoint of its westerly line. The main portion of the 99.6-acre tract, which was slightly longer from east to west than it was from north to south, was divided by the right of way in such manner that there remained 40 acres on the north side of the right of way and 37 acres on the south. The north 40 acres was further divided by a drainage channel easement containing 3.349 acres. The other two drainage easements were out of the extreme northeast corner of the property, one containing 1.021 acres out of the north 40 acres and the other containing .762 acres out of the south 37 acres.

Numerous points complain of argument to the jury by appellees' attorney. No objection was made at the time to some of the argument. Objection was made and sustained concerning most other argument. We have examined the arguments complained of and the record pertinent thereto, and find no reversible error. Appellant's point number 11 complains of the cumulative effect of all of the instances of claimed prejudicial argument. We have considered this point and find no reversible error. All of the argument of appellees' attorney to the jury was prefaced by his stated intention to present to the jury in his own words the position of the State on various issues and phrases of the case and to demonstrate how improper and unfounded such positions were.

■ Appellees' attorney in his argument to the jury state, in effect, that the State was contending the enhanced value of appellees' remaining land was "Just about enough to offset what we will pay you for what we will take." Appellant's contention that this was a "positive misstatement of the law—telling the jury, in effect, that a finding of enhancement to the remainder would constitute an offset against what the State would otherwise have to pay for the property taken" is not well taken. The effect of the argument was not to advise the jury about the law as appellant contends, but to state appellees' understanding of the state's position. There was testimony by some of the State's witnesses which fully justified the inference, or conclusion, indulged by appellees' attorney. An attorney, in arguing to the jury is entitled to draw reasonable conclusions and inferences from the evidence in the record.

■ It was shown that appellees' land with a perimeter of 10,000 feet, had access to the outside world by only a little over 500 feet of a gravel public road. A major contention by the State concerning enhancement was the furnishing to appellees of an unrestricted right to get on and off of paved access roads which extended across the entire length of the property. It was urged as a vital part of the State's case that access to these frontage roads could not be denied and that same would always be available for the use of the property and the owners thereof. Appellees' attorney in stating his version of the State's position in reference to this matter, stated to the jury: "We might give you authority to build across and get on the access road." This is the argument complained of in appellant's point number 3. Appellant urges that such argument casts "a doubt on the rights of the property owners to use at will the frontage or access roads to be built by the State". The point is not well taken.

In the first place the argument was not objected to at the time, and the error, if any, was not of such highly prejudicial and inflammatory nature that it could not have been cured by an instruction from the court. In the next place, there was some basis for the argument in the evidence. An engineer for the State testified on cross-examination that the highway was a controlled access highway and that a property owner could enter upon the service road from any point on the Childress property "after they got a permit from the State of Texas." The engineer also testified that the securing of a permit would be "no chore". There was other testimony by engineers of the State that one desiring to "build a structure that comes on to a right of way" would have to get a permit. Obviously there was some restraint or regulation of the right of an abutting land owner to enter upon the road. The argument of appellees' attorney was therefore not without basis in the record and he was entitled to discuss with the jury the existence and extent of the restraint and regulation. The argument under these circumstances, particularly in the absence of an objection at the time, does not constitute reversible error.

■ Appellant's point number 4 complains of the following argument to the jury in which appellees' attorney gave his version of a contention urged by the State:

> "Well, we feel that you can really clean up by dividing what you have left into small tracts and selling it to people who want to raise chickens and horses if it just weren't for the fact that they can't raise chickens and horses out there. Now, we want to do it our way."

Appellant objected to the above argument at the time on the ground that it was not supported by evidence and was contrary to the evidence. A witness for the State had testified that the highest and best use for the Childress land was for suburban acreage where people could run cattle and chickens and get away from thickly populated areas. The evidence shows that the major portion of the Childress land was inside the Abilene city limits. On cross-examination the witness admitted that cattle and chickens could not be kept in the city, but appellant's objection to this testimony on the ground that it was hearsay because no ordinance of the city was introduced was sustained and the jury was instructed not to consider the testimony. The error, if any, in the argument complained of was harmless. The argument was not of a highly prejudicial and inflammatory nature. It was in answer to appellant's contention that the highest and best use of the land was suburban acreage where homeowners could keep chickens and livestock. Obviously appellant's contention assumed that it would be permissible to keep such chickens and livestock, although there was no evidence to justify such an assumption. Under the circumstances, appellees' argument assuming to the contrary was not reversible error. Actually it is common knowledge that chickens and livestock are generally not permitted to be kept within the corporate limits of most cities.

■ Appellant's point number 5 complains of the statement by appellees' attorney while examining the jury panel that the land in question was the home of appellees and that the State was taking it from them. Appellant's points numbers 6 and 7 complain of alleged improper statements in the closing argument of appellees' attorney. The effect of appellant's contention in these points is that the statements to the jury constituted an appeal to "sympathy and home", and thereby caused the jury to render a verdict which it would not otherwise have rendered. The argument complained of in points 6 and 7 was another instance of appellees' attorney presenting his version of the State's contention concerning certain issues in the case and his reply thereto. The argument was substantially as follows:

> "We are taking this land,—but,—*how can we mitigate the consequences* of

what we are going to have to pay for it, *of what they have done to these people* and their property, *the property that they own and did not want to give up. And we didn't tender it to the State of Texas on a silver platter and say, here it is, take it, we don't want it.* (Emphasis added is that of appellant.)

"Now, then, ladies and gentlemen, is this or not a fairly clear statement of the position taken by the State of Texas in this lawsuit. *We can assure you now State of Texas, you are not welcome to the property, and it has never been tendered to you.* If the State weren't trying everything in their power to drive the value down on this land, to win this lawsuit, then, why two different appraisals out here of the Childress property with six different appraisers?" (Emphasis added is that of appellant.)

The above statements by appellees' attorney were either not objected to at the time, or the court sustained appellant's objection that the argument was an appeal to bias, prejudice and sentiment and instructed the jury not to consider same. The statements and arguments were not of such a vicious, prejudicial and inflammatory nature that the effect, if any, on the jury was not, or could not have been, removed by the court's instruction. Since the error, if any, was curable, reversible error is not shown. Rogers v. Broughton, Tex.Civ.App., 277 S.W.2d 121 (R.N.R.E.); Younger Brothers, Inc. v. Myers, Tex., 324 S.W.2d 546.

Appellant's points eight and nine complain of argument to the jury by the appellees' attorney urging that the State introduced no evidence showing any comparable sale for less than the comparable sales shown and relied upon by appellees. The argument was as follows:

"* * * if there had been one single sale that would offset these sales we have talked about and introduced into evidence, they would have been here to show it to you."

"* * * The state's case is silent; silent as death itself on one single figure showing a sale out there of less than $1,000.00 or $1,100.00 or $1,200.00 an acre. Silence gives consent."

Appellant objected on the ground that "the argument was unfair" and that it "was contrary to the facts". The objection was sustained and the jury was instructed not to consider the argument. Appellant contends that the argument nevertheless constitutes reversible error because the State had tendered a witness who would testify to a comparable sale of a tract of land adjoining the property in question but that the testimony was, upon an objection by appellees, excluded under technical rules of evidence. Appellant urges that under these circumstances it was "manifestly unfair and highly prejudicial for said attorney to score the plaintiff and said witness for failing to produce evidence which he himself, had blocked", and that the argument was of such highly prejudicial nature that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment.

■■ These points are not well taken. As urged in the argument of counsel for appellees, there was no evidence showing a comparable sale for "less than $1,000.00 or $1,100.00 or $1,200.00 an acre." Argument pointing out this condition of the record is not as a general proposition erroneous, but on the contrary is permissible and proper. Texas Electric Ry. Co. v. Gonzales, Tex.Civ.App., 211 S.W. 347 (Writ Ref.); Glade v. Dietert, Tex.Civ.App., 286 S.W.2d 955; Brock v. Graham, Tex.Civ.App., 321 S.W.2d 593; Hughes v. Belman, Tex.Civ.App., 239 S.W.2d 717 (N.R.E.). Neither can we agree with appellant's contention that the argument was unfair and constituted reversible error because appellant was precluded from introducing evidence of comparable sales more favorable to appellant's case by reason of the fact that counsel for appellees urged and secured a ruling of the court ex-

cluding appellant's tendered evidence on technical grounds. Appellant does not complain of the action of the court in excluding its evidence of a comparable sale. Appellees had a right to urge any valid objection to evidence tendered by appellant. Under this state of the record no reversible error is shown.

■ We also overrule appellant's contention that the cumulative effect of all the argument complained of was such as to require a reversal. The arguments complained of do not present such a persistent and prejudicial accumulation of breaches of the rules of argument that the cumulative effect was such that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, Texas Rules Civil Procedure; Aultman v. Dallas Ry. & Terminal Co., 152 Tex. 509, 260 S.W.2d 596; King v. Federal Underwriters Exchange, 144 Tex. 531, 191 S.W.2d 855; Southern Pacific Co. v. Hubbard, 156 Tex. 525, 297 S.W.2d 120.

Appellant's 12th point complains of the action of the court in permitting the witness Hinds to testify concerning a claimed comparable sale of a 103-acre tract by W. N. Casey to Abilene Development Corporation at $1,134 per acre over appellant's objection that a proper predicate had not been laid in that similarity of the land and voluntariness of the sale had not been shown. Appellant's points 13 and 14 also complain of the admission of claimed comparable sales, one of which was a sale of a 20-acre tract by the Abilene Development Corporation to the Abilene schools for $1,250 per acre and the other a sale of a 64.34-acre tract by Jack Hughes to Dub Hayter for $1,500 per acre. Appellant does not question the voluntariness of the latter two sales but urges that no predicate was laid for their admission as evidence because there was no showing of similarity between the land involved in such sales and the land here in question.

■ The general rule in such cases is that the question of the degree of similarity

in the land involved in a claimed comparable sale, including the relative nearness of time and distance to the sale and land under consideration, is left largely to the discretion of the trial court. 32 C.J.S. Evidence § 593, p. 447; City of Houston v. Pillot, Tex.Civ.App., 73 S.W.2d 585, 591, reversed on other grounds, Tex.Com.App., 105 S.W.2d 870; City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808, and authorities there cited.

■ The evidence concerning each of the claimed comparable sales in the instant case established the identity of the parties to the transaction, the date of the sales which were not unreasonably distant in time from the date of the trial, the location of the land involved and its reasonable proximity to the Childress land, the number of acres in each of the questioned tracts and the fact that in the opinion of the witnesses such tracts constituted similar or comparable land to the Childress land. The court did not err in refusing to sustain appellant's objection and contention that a predicate had not been laid because similarity had not been shown.

We also overrule the contention in appellant's 12th point concerning the alleged erroneous admission of evidence of the claimed comparable sale there involved on the ground that it was not shown that the sale was a voluntary one. The witness Hinds testified that he and his associates had purchased the land and taken title as the Abilene Development Corporation in 1956. Apparently the land was purchased for the purpose of development. It was obviously a voluntary purchase by the witness and his associates who were willing to pay the purchase price. Mr. Hinds testified that in his opinion the value of the property had not decreased but was fully as high as when the purchase was made. Mr. Hinds also testified that the Abilene Development Corporation later sold 20 acres of this same land to the Abilene Independent School District at $1,250 per acre. The voluntariness of that sale is not

questioned by appellant. We are of the opinion that there was no error in the admission of the evidence concerning the comparable sale complained of in appellant's point number 12 on the ground that there was no showing that the sale was a voluntary one. City of Amarillo v. Attebury, Tex.Civ.App., 303 S.W.2d 804. If there was error, it was harmless.

■ In appellant's 15th point it is contended that the court erred in admitting appellees' exhibit number 2, which was a plat of the subject property showing a theoretical and nonexistent subdivision having superimposed thereon the proposed improvements by the State, purporting to show the detrimental effects of the proposed improvements upon such theoretical and nonexistent subdivision. Prior to the introduction of appellees' exhibit number 2, appellees had placed in evidence, over appellant's objection, their exhibit number 1 which showed the Childress property laid out as a residential subdivision. Appellant's objection to the introduction of exhibit number 1 was that such plat was remote, speculative, conjectural and not a fair criterion of the market value on the date of the taking of such property. Exhibit number 1 was admitted for the narrow and limited purpose of showing the adaptability of the property for subdivided uses. See City of Austin v. Cannizzo, Tex.Civ. App., 260 S.W.2d 54 and 153 Tex. 324, 267 S.W.2d 808. In offering their exhibit number 2, appellees stated to the Court:

> "* * * we offer * * * Exhibit Number 2 for the same limited purpose, that is, to show the location * * * what * * * effect the location of the highway right of way and the drainage channel easement has upon this property, in connection with Defendants' Exhibit number 1 and for no other purpose."

Appellant's objections to the introduction of appellees' exhibit number 2 were the same as the objections urged to exhibit number 1.

■ In determining the value of land taken by eminent domain, all the uses to which the land is adapted and might be put should be taken into consideration. 29 C.J.S. Eminent Domain § 160, p. 1024; 18 Am.Jur. 878, 879; Raleigh, C. & S. R. Co. v. Mecklenberg Mfg. Co., 166 N.C. 168, 82 S.E. 5, L.R.A.1916A, 1079. Appellees' Exhibit number 1 was admitted as evidence of a use to which the property was adaptable at and prior to the taking. Appellees' exhibit number 2 was likewise admissible as tending to show that the land was not capable, or susceptible, of being put to such use after the taking of the right of way. 29 C.J.S. Eminent Domain § 160, pp. 1025, 1026. Appellant's contention that the evidence shows, by testimony of witnesses and by appellant's (plaintiffs') exhibit number 2, that other designs of subdivisions would be feasible is not controlling. These considerations concern the weight rather than the admissibility of the evidence in determining the value of the land. Appellant's point number 15 is overruled.

■ We also overrule appellant's point number 16 urging that the verdict and judgment are excessive. The record is voluminous and we will not attempt to detail the evidence bearing upon the question of value. The jury found that at the time of the taking, the market value of the 3.349-acre strip of land described as the channel easement tract number 1 was $300 per acre and that the value of the remaining land was $850 per acre. In our opinion there was ample evidence to support the findings of the jury as to the value of the land taken. Three witnesses testified that in their opinion the value of the land prior to the taking thereof was of value ranging from $750 to $1,000 per acre. There was evidence of sales of other lands, which in the opinion of the witnesses were comparable sales, for $1,100 to $1,200 per acre and more. There was also ample evidence to

support the finding that the market value per acre of the 72.804 acres remaining after the taking was $600 per acre.

The judgment of the trial court is affirmed.