## MUSKOGEE SAND & GRAVEL CO. v. HULBERT et al.

No. 20740. Opinion Filed July 28, 1931.

Rehearing Denied March 29, 1932.

C. F. Gordon, for plaintiff in error.

C. F. Bliss, Henry Vance, and R. M. Mountcastle, for defendants in error.

RILEY, J. This is an action brought by defendants in error, herein referred to as plaintiffs, against the plaintiff in error, herein referred to as defendant, to recover damages in one cause of action for the removal of certain gravel from the bed of Grand river on land alleged to be owned by plaintiff D. H. Hulbert as riparian owner and upon which plaintiffs Harmon and Mountcastle claimed a lease, under which they claimed the exclusive right to mine and remove the gravel, and in a second cause of action for damages for injuries to the freehold itself by cutting a channel through the gravel bed on the land owned by plaintiff Hulbert which caused the water in the river to cut and wash away the gravel and caused it to be deposited down the river upon the adjoining land, upon which defendant held a lease. The acts complained of were alleged to have occurred between the first day of August, 1926, and the date of filing the petition, July 21, 1928.

Defendant answered the petition by general denial, and allegations to the effect that neither of the alleged causes of action accrued to plaintiffs, or either of them, within two years next preceding the commencement of the action, and that each of said causes of action was barred because of the statute of limitations as provided by section 185, C. O. S. 1921.

The cause was tried to a jury, resulting in a separate verdict and judgment in favor of plaintiffs in the first cause of action in the sum of $12,500, and a separate verdict and judgment in favor of plaintiff Hulbert alone on the second cause of action in the sum of $1,000.

Motion for a new trial as to each verdict and cause of action was filed and overruled, and defendant appeals.

The first assignment of error presented is irregularity in the proceedings of the court, jury, and prevailing party, and abuse of discretion by the court by reason of which defendant was prevented from having a fair trial, in that before the case was called for trial on February 26, 1929, the court announced that the jury fund was exhausted and that the jury could not be paid for its services beyond that day, and thereupon this cause was called for trial, and the parties were required to make announcements, whereupon plaintiffs announced ready for trial and defendant stated to the court that the cause involved several novel ques-

tions and that it had at least ten witnesses necessary to sustain its defense and because of the question involved and the number of witnesses necessary the cause could not be tried in less than two days, and that the defendant stated that under the circumstances it was not ready for trial, and the court, over the objection of defendant, ordered the case to trial; that the case was commenced at one o'clock p. m. of that day and continued until 11:30 that night, was resumed at 9 o'clock the next morning, and the cause was not submitted to the jury until 10:30 p. m.; that notwithstanding the complicated issues of fact, counsel were limited to 20 minutes on each side for their argument. That once during the progress of the trial the first evening, counsel called the attention of the court to the fact that the jury, counsel, witnesses, and the court were weary because of the lateness of the hour and asked for an adjournment until the next day, which was refused. It is asserted that the trial under such circumstances was highly prejudicial to defendant.

Plaintiffs' counsel assert that the record does not bear out defendant's contention in this regard. In the main this assertion is correct. The record does not contain the alleged statement of the court with reference to the jury fund being exhausted. Neither does it show objection by defendant to going to trial. In fact, the record shows that when the case was called for trial, both sides announced ready without reservation. The record does disclose that during the night session of February 26th, while a witness was on the stand, one of defendant's counsel made the following suggestion:

"Mr. Jones: Now, if the court pleases, the defendant asks that this case be continued until tomorrow morning. The jury is tired out and one of the jurors is nodding and the lawyers are tired out and your honor is tired and we cannot fairly present this case and it is now 11:10 o'clock, and we do not think it is fair to the court, or the jury, to proceed further with the case and we ask at this time that the hearing be continued over until tomorrow morning."

The motion was denied and the trial proceeded until the witness then upon the stand was excused, when a recess was ordered by the court until 9 a. m. next day. The recess was ordered probably not more than 20 minutes after the request was made.

As to the contention that counsel were unduly limited in the argument, the record does not disclose that they were in fact limited to 20 minutes on each side, or to any other specified time. No objection appears in the record on account of any limitation of the argument and no exception was saved by defendant.

Such matters as the hours of convening court, the length of the sessions, and whether or not night sessions are to be held, and if so, how late, are matters necessarily in the discretion of the trial judge. No objection seems to have been made to holding the night session.

With the record thus it cannot be said that there was such irregularity as to deprive defendant of a fair and impartial trial.

Defendant presents assignments 2 to 7, inclusive, together. They go to the question of alleged defect of parties plaintiff and misjoinder of causes of action. All of the authorities cited by defendant go to the question of misjoinder of causes of action.

That there was a misjoinder of causes of action may be conceded. Plaintiffs were suing for the wrongful taking of gravel from the premises in one cause of action and for damages to the freehold in the other cause of action. Plaintiffs Harmon and Mountcastle had no interest in the second cause of action. Hulbert owned the land, and any cause of action arising for damage to the freehold accrued to him alone. The trial court so held and instructed for separate verdicts. and separate verdicts were rendered. Bryan v. Sullivan, 55 Okla. 109, 154 Pac. 1167; Gardner v. Rumsey, 81 Okla. 20, 196 Pac. 941; Jeffers v. Forbes, 28 Kan. 174, and Swenson v. Moline Plow Co., 14 Kan. 387, all hold, in effect, that:

"In an action at law two or more persons having separate causes of action against the same defendant, though arising out of the same transaction, cannot unite; nor can several plaintiffs in one complaint demand several distinct matters of relief; nor can they enforce joint and separate demands against the same defendant."

But plaintiffs contend that under the record in the instant case defendant is not in a position to urge this question, in that the question of misjoinder of causes of action was not properly raised, and if it existed, it was waived by defendant.

In this we think the plaintiffs are correct.

In State Exchange Bk. v. Natl. Bk. of Commerce, 70 Okla. 234, 174 Pac. 796, it was held:

"A misjoinder of causes of action can only be reached by special demurrer setting forth distinctly the grounds of objection, and cannot be met by general demurrer or by objection to the introduction of evidence."

In the opinion it is said:

"It is clear from the statutes cited that any defects as to misjoinder of causes of action apparent on the face of the pleadings must be pointed out by demurrer specifically and distinctly, or the same will be regarded as waived."

In Young v. City Natl. Bk. of Lawton, 109 Okla. 271, 235 Pac. 908, it was held:

"A misjoinder of causes of action can only be reached by special demurrer, setting forth distinctly the ground of objection, and where the defendant files his answer without first filing such demurrer, the objection is waived."

In the instant case the defendant filed a demurrer to the petition as follows:

"Comes now the defendant, Muskogee Sand & Gravel Company, and demurs to the petition of the plaintiffs filed herein and for its grounds of objection states:

"That this petition does not state facts sufficient to constitute a cause of action in favor of the plaintiffs and against the defendant.

"That the petition shows on its face that the alleged cause of action is barred by the statute of limitations in such cases made and provided."

This was the only demurrer filed, and nowhere therein is the subject of misjoinder of causes of action mentioned. The first time it is mentioned was in the objection to the introduction of evidence. It was then too late under the rule announced in the cases cited above.

The question of misjoinder of parties plaintiff was raised for the first time at the trial in the objection to the introduction of evidence. Defect of parties plaintiff, as used in subdivision 4, section 268, C. O. S. 1921, means too few and not too many plaintiffs. Niblo v. Drainage District, 58 Okla. 639, 160 Pac. 468.

In St. Exchange Bk. v. Natl. Bk. of Commerce, supra, it was held:

"A misjoinder of parties or excess of parties cannot be taken advantage of by demurrer, but can only be reached by motion filed before joint (joining) issues on the merits."

No motion was ever filed raising this question, and the objection mentioned was after issues were joined on the merits.

It is next contended that the court erred in the admission of certain evidence offered by the plaintiffs. The first evidence assailed is that given by H. H. Hellem. He qualified as an expert witness and was county surveyor of Wagoner county, and was a graduate engineer of several years' experience. He testified, in substance, that on one occasion he had examined the premises and at another time had assisted in making a survey, but did not set at the latter time examine the property or gravel or excavations of gravel on the premises. He then testified, over the objection of defendant, to an estimate made by him as to the amount of gravel that appeared to have been removed in a certain area, claimed to be upon the premises of the plaintiffs. It is urged that this witness was not qualified for the reason that no sufficient examination of the premises was shown to have been made by him so as to qualify him to testify as to this question. Defendant in its brief quotes at length from what the witness testified he saw and observed or failed to observe at the time he assisted in making the survey, and asserts that this shows that the witness was utterly incompetent to testify to the extent of excavations, etc. The witness did testify that he made no examination of these things at the time he assisted in making the survey, but he also testified that the other time that he examined the premises he was there several days and observed the premises under different stages of water in the river and it was from this examination he was testifying as to his estimate of the amount of gravel taken from the premises. We think his qualifications were sufficiently shown.

The next evidence assailed is that of the plaintiff Harmon, who testified in substance that on one occasion he talked with a Mr. Baird about the damages that might be done to the gravel bar of Mr. Hulbert if they continued the operation so as to cut a channel through the gravel bar. When asked what Baird said, he testified:

"A. He said that is what he wanted to do. He said he wanted to bring that down there—bring that gravel down there where they could operate."

The objection urged is:

"At no place in the record is it shown who said Baird was and what his connection was with the defendant company. Neither was it shown that the officers of said company had any knowledge of the remarks of the aforementioned Baird, all of which is highly prejudicial and detrimental to the cause of this defendant."

In this, counsel is utterly mistaken. At page 221 of the case-made, the same witness, in connection with the same subject-matter, testified as follows:

"Q. Did you call anybody's attention to the fact that they were operating over the line? A. Yes, sir; I did repeatedly. Q. Whose attention did you attract, Mr. Harmon? A. Superintendent of the Muskogee Sand & Gravel Company. Superintendent and manager. Q. Who? A. Mr. Townsend and Mr. Baird, manager at the plant. * * * Q. What time did you talk to Mr. Baird? A. I think the 15th day of May, '26, the last time I talked to him. We stood on the ground and I pointed out to him my contention of the line and our contention of where the line is."

Clearly the contention made cannot be upheld.

It is next contended that the court erred in refusing to permit defendant to introduce a map or plat purporting to show the boundary line between the lands of Hulbert and that of defendant, made by a Mr. New, a surveyor and civil engineer. It was objected to as an attempt to vary the line established by the county surveyor of Cherokee county after notice was given all the interested parties as provided for in sections 5919-5924, inclusive, C. O. S. 1921, and from which no appeal had been taken. The objection was sustained upon this ground. Whereupon the witness explained that the map or plat did not purport to change or vary from the line established by the county surveyor, but that in fact the line shown on the plat made by him was the same line or corresponded to the same line established by the county surveyor. Defendant then asserted that the only purpose of the plat was to illustrate and explain to the jury the testimony of defendant's witness. That the line was not shown on the plat introduced by plaintiffs and was shown on the one offered by defendant. We think defendant should have been permitted to introduce the plat, as it might have made the contention of the parties a little more clear to the jury. However, we do not think this was such error as requires a reversal.

All the witnesses, both for plaintiffs and defendant, who attempted to testify on the question of whether or not defendant had in fact crossed the boundary line and removed gravel from plaintiffs' premises, claimed to know and be familiar with the location of this line on the premises and gave their testimony accordingly. The witnesses for defendant all testified with reference to the line as located on the property rather than from the plat. The county surveyor testified as to the location of a certain iron pipe or stake on the bank of the river and on the section line between the land of Hulbert and defendant as the meander corner of the land of the respective parties and which was found to be the correct corner. His report, as shown by the surveyor's record, shows that the boundary line between the riparian property of the parties in the bed of Grand river was established from this point "thence 27° 7 M. 36 secs. west of north 869 feet to center of Grand river; the main thread of the stream. Place stake on main thread of stream." Another witness testified that this line, extended across the river to the opposite bank, ran directly to a certain cottonwood tree which was marked as the line thus extended. All defendant's witnesses testified that looking across the stream from the iron pipe spoken of to the stake or to the cottonwood tree, none of the operations of the defendant company had extended above or across the line thus formed.

The plat or map offered and rejected is not shown in the case-made, nor is any copy thereof in the case-made, and we are unable to say that the line shown thereon was the same or different from that established by the county surveyor. But careful analysis of the whole testimony of the witness New indicates that it would be different. He intimates that he took as his starting point the meander corner indicated by the field notes of the United States government survey made some 30 years before. All the evidence shows that the river bank at that point had, during that time, washed away, and that the bank of the river at the time the line was established by the county surveyor was 119 feet south from the point indicated by the government survey as the meander corner. However, defendant does not contend that it is not bound by the line established by the county surveyor. No explanation is made why the plat or copy thereof was not made a part of the case-made, and we are unable to say whether or not the line sought to be shown on the plat was the same or different from the line established by the county surveyor. If it was different, then the plat was inadmissible. If it was the same, we cannot see wherein defendant was prejudiced by the exclusion of the plat.

It was contended, however, that the jury might have been misled by the rejection of the plat on the question of whether or not the alleged trespass was unintentional or willful, and consequently misled as to the correct measure of damages.

The verdict of the jury indicates clearly that the trespass was not found to be willful. The amount of gravel alleged in the

petition to have been removed by defendant from plaintiffs' premises was 140,000 cubic yards, or 204,135 tons. The value thereof was alleged to be 50 cents per ton, and the amount claimed for the removal thereof was $93,333.00. Plaintiffs' evidence tended to show a maximum amount of about 195,000 tons of gravel removed, of a maximum value of from 50 to 55 cents per ton after it had been mined and prepared for market, or from 15 to 18 cents per ton in place in the river bed. It seems to be conceded that the measure of damages, if the taking were willful, would be the fair market value of the gravel ready for the market. If the taking was not willful, but was unintentional, the measure of damages would be the value of the gravel in place in the river bed. The verdict of the jury was for $12,500, slightly more than 6.41 cents per ton, which was much less than the minimum value placed thereon by any of the witnesses for plaintiffs. Witnesses for defendant placed the value of the gravel, mined and ready for the market, at about 50 cents per ton, and as it lay in place in the river bed at about 2 cents per ton. The evidence showed the weight of the gravel was about 2,600 pounds per cubic yard. Plaintiffs contended for 140,000 cubic yards, which would be about 182,000 tons, and at the minimum value placed thereon by the witnesses for gravel mined and ready for the market, namely 50 cents per ton, would be worth $91,000. The verdict of the jury, therefore, could not have been based upon willful trespass. We cannot say that the exclusion of the plat was not error, but, if it was error, we think the error harmless.

It was contended that the court erred in rejecting certain testimony of the witness Mr. Stueve as to the value of the gravel in place in Grand river. This witness was first asked concerning certain operations for sand and gravel with which he had been connected sometime in 1925. The court sustained an objection to this class of testimony as not being within the time covered by the issues. He was then asked:

"Q. Do you know the value of the gravel in place between the dates of 1926, say in August and July 28, 1928, at this point, Mr. Stueve?"

This was objected to upon the ground that the witness had not been properly qualified. The court suggested that the counsel was asking the witness whether he knew, and that the witness could answer that question, and that if he stated that he did know, he could then be asked how he knew. The objection was overruled. The witness

answered in the affirmative. Then the following record was made:

"Q. What was that value? Mr. Mountcastle: Now, we object—incompetent, irrelevant, and immaterial. The Court: Yes. Let's see how he knows it. Mr. Jones: If a man says that he knows, it doesn't seem to me that he is to be qualified any more. The Court: Well, the objection is sustained. Mr. Jones: Note our exception. Q. Now, you say that you know the market value of gravel in space between the dates mentioned. How do you know that, Mr. Stueve? A. I know what the royalty paid by the Grand River Gravel to J. L. Haner amounted to. Q. What is that? Mr. Mountcastle: Objected to for the reason that it is not a proper way to qualify the witness, and it is not responsive and he is trying to prove the value of the gravel—The Court: The objection is sustained. Mr. Jones: Note our exception. * * * Q. Are you familiar with the market price of gravel as it lies in the bed of Grand river during the period of time from August '26 to July '28? Mr. Mountcastle: Objected to for the reason it is incompetent, irrelevant, and immaterial. The Court: The objection is sustained. Mr. Gordon: Note our exception. Mr. Jones: For the purpose of the record, we wish to prove by this witness that the market value of the gravel in the stream in Grand river, between August '26 and July '28 was two cents per cubic yard; and that, we think, would be his testimony; and likewise wish to prove by this witness that he knows the royalty value of gravel between the dates mentioned and, if permitted to testify, he would testify that as to the royalty value of gravel, which we must say is the value of the gravel in place under the law. Mr. Mountcastle: Objected to for the reason the witness had not been properly qualified, and that the royalty value of some other plant is not the true value and it is not the way to prove value. The Court: The objection is sustained. Mr. Jones: Note our exception."

It will thus be seen that the witness never did qualify, as he stated his knowledge was based upon what the royalty paid by the Grand River Gravel Company to J. L. Haner amounted to. The record shows that counsel was attempting to prove the royalty value of gravel in place rather than the market value. The question at issue was the market value of the same gravel when ready for market and the market value of the gravel in place in the river bed; the one to establish the damages in case of unintentional trespass, and the other in case of willful trespass. What was paid for royalty by some lessee would not be competent, and certainly so unless the contract therefor was shown to have been made sometime near the date of the alleged trespass.

We think there was no error in excluding the evidence under the record and offer made.

Other questions of minor importance are raised, but we think the issues were fairly presented to the jury under fair and proper instructions, and from the record as a whole no reversible error appears.

The judgment is, therefore, affirmed.

CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. LESTER, C. J., absent. KORNEGAY, J., not participating.