## CITY OF TULSA v. CREEKMORE.

No. 23851. Feb. 6, 1934.

H. O. Bland, City Atty., Langley & Langley, H. M. Gray, O. H. Searcy, C. L. Hamilton, and Edna Claire King, for plaintiff in error.

Richard Wheatley and Davidson & Williams, for defendant in error.

ANDREWS, J. This is an appeal from a judgment of the district court of Craig county in favor of the defendant in error, a landowner, against the plaintiff in error, who had condemned certain land for municipal waterworks purposes, for the amount of damages sustained by reason of the condemnation of the land.

The record shows that commissioners were appointed in the condemnation proceeding by the district court of Delaware county on the 21st day of July, 1923; that they fixed the amount of damage sustained by the landowner at $10,000; that the city of Tulsa objected thereto; that a jury of twelve men, by unanimous verdict, fixed the amount of damage at $17,000; that the trial court rendered judgment for $17,000, less $10,000 paid, with interest at the rate of 6 per cent. per annum from the 2nd day of April, 1924, on $7,000; that a motion for new trial was overruled, and that the city of Tulsa appealed to this court.

As stated in the brief of the city of Tulsa, the ultimate question for determination was the market value on April 2, 1924, of 55

acres of land belonging to the defendant in error that had been taken by the city, and the amount of damage to 45 acres of land belonging to the defendant in error that had not been taken.

That the verdict of the jury is amply supported by evidence is not questioned by the city of Tulsa. However, it contends that the amount of the verdict is excessive. The amount of the verdict is clearly within the limits fixed by the testimony shown by the record in the case. It is not excessive if that testimony is competent and if it was properly admitted in evidence. The testimony of Dr. F. M. Adams, medical superintendent of the General Oklahoma Hospital at Vinita, and others, that they knew the market value of the property and that it was worth from $200 to $250 per acre, is neither speculative, silly, nor unbelievable, as contended. If there was anything tending to impeach that testimony, it is not disclosed by the record in the case, and the verdict of the jury is to the contrary.

The measure of damages in condemnation proceedings where private property is taken in the exercise of the right of eminent domain under the statutes of Oklahoma the market value of the property actually taken at the time it is so taken, and for the impairment or depreciation of value done to the remainder. Oklahoma Natural Gas Co. v. Coppedge, 110 Okla. 261, 237 P. 592; City of Cushing v. Sarber, 92 Okla. 59, 217 P. 866; Public Service Co. of Oklahoma v. Raburn, 162 Okla. 81, 19 P. (2d) 167. It is the market value that is the test and not its value for some particular use to which it might be subjected, although its adaptability to this particular use may be considered as one of the factors in ascertaining the market value when they enter into and affect the cash market value of the property. Revell v. City of Muskogee, 36 Okla. 529, 129 P. 833; Public Service Co. v. Leatherbee (Ill.) 143 N. E. 97.

The city of Tulsa bases its claim that the judgment of the trial court should be reversed, in part, upon its contention that proof that the land condemned had a value for recreational purposes, without proof that there was a demand for such land "sufficient to cause it to sell for a higher price," is insufficient. The record shows that the land had a value for recreational purposes in addition to its value for agricultural purposes. The fact that other land similarly situated had such a value is material only in so far as the available

supply operated to reduce the value of the land in question. In no wise did it operate to destroy its value for recreational purposes. The correct rule, that stated by this court in Revell v. City of Muskogee, supra, as follows:

"In ascertaining the value of land taken under eminent domain, its market value is the test, and not its value for some particular use to which it might be subjected, although its adaptability to this use may be considered as one of the factors in ascertaining its market value"

—is admitted by the city. It also admits that the correct rule for measuring the value is "to determine the reasonable market salable value of the property if the owner was offering to sell on usual terms and the purchaser desired to buy." Blincoe v. Choctaw, Oklahoma & Western Railroad Co., 16 Okla. 286, 83 P. 903. However, it contends that the testimony offered on behalf of the defendant in error was incompetent for the reason that the witnesses did not show knowledge of facts necessary to qualify them to give an opinion. That contention is not supported by the evidence and is in conflict with the law of this state, wherein the rule followed is that the particular qualifications of a witness to give an opinion as to the value of lands, as shown by his examination, go only to the probative force of the opinion. Wichita Falls & N. W. Ry. Co. v. Harvey et ux. 44 Okla. 321, 144 P. 581. It cannot be said that the evidence offered was incompetent. The record shows testimony on behalf of Mr. Creekmore in conformity with the rule stated in the case last cited and in conformity with the rule stated in Incorporated Town of Sallisaw v. Priest, 61 Okla. 9, 159 P. 1093, from which we quote as follows:

"In the sixth and seventh assignments of error the plaintiff in error claims that the trial court erred in permitting several witnesses to testify as to the value of the farm from which the land condemned was taken without requiring such witnesses to show themselves qualified to give such testimony, and that the trial court erred in refusing to strike such testimony of such witnesses. Upon a careful examination of the record, in the light of the decisions of our own court, and the great weight of authority, we find no error was committed by the trial court in his rulings relative to the testimony of such witnesses. These witnesses were all farmers. All testified in their direct testimony that they were acquainted with the land in question and the market value of land in that vicinity. While it is true that under the skillful cross-examination of

counsel for plaintiff in error some of these witnesses seemed to contradict their direct testimony in some particulars, yet they come squarely within the rule as announced in the following cases, and the weight of their testimony became a question for the jury: Wichita Falls & N. W. Ry. Co. v. Harvey et ux., 44 Okla. 321, 144 P. 581; Wichita Falls & N. W. Ry. Co. v. McAlary, 44 Okla. 326, 144 P. 583; Idaho-Western Railway Co. v. Columbia Conference, etc., 20 Idaho, 568, 119 P. 60, 38 L. R. A. (N. S.) 497; Raleigh, C. & S. R. Co. v. Mecklenburg Mfg. Co., 166 N. C. 168, 82 S. E. 5, L. R. A. 1916A, 1079.

"As it does not appear there was any abuse of discretion upon the part of the trial court with reference to his rulings on the testimony of these witnesses, his rulings thereon will be permitted to stand."

In reviewing this record we have not attempted to weigh the evidence. We have considered the record only for the purpose of determining whether or not it contains competent evidence reasonably tending to sustain the verdict of the jury under the rules herein stated.

The fact that the value placed on the property for recreational purposes far exceeded the admitted value for agricultural purposes, is immaterial. The writer of this opinion knows of a lake where the shore line lots are worth considerably more than other lots in the vicinity and where none of the lots is worth anything for agricultural purposes. He owns a fishing camp on land that is not worth anything for agricultural purposes, that is valuable for recreational purposes, and for which he has received many offers to purchase. The value of his property is not depreciated by the fact that he uses it solely for recreational purposes. If such was the rule, the value of his dwelling house property would be depreciated.

As a corner lot in a city may be more valuable than an inside lot, as a farm adjoining a paved road may be more valuable than one away from a paved road, as a lot on one side of a street may be more valuable than a lot on the other side, and as agricultural land within a city may be more valuable than such land outside of a city, so land in the country may be more valuable because of its proximity to such a stream as the Spavinaw and because of its availability for recreational purposes. Within sight of this Capitol building there is a considerable tract of land that has not been used for anything other than a farm home, yet it is valuable for city building purposes by reason of it being within this city and by reason of it being surrounded by dwelling houses. Its value for city building purposes far exceeds its value for agricultural purposes.

We quote from Nichols on Eminent Domain (2d. Ed.) vol. 1, sec. 217, as follows:

"It is well settled that, when a parcel of land is taken for public use by the exercise of the power of eminent domain, the measure of compensation is the fair market value of the land. By fair market value is meant the amount of money which a purchaser willing but not obligated to buy the property would pay to an owner willing but not obligated to sell it, taking into consideration all uses to which the land was adapted and might in reason be applied."

From section 219, as follows:

"In determining the market value of a piece of real estate for the purposes of a taking by eminent domain, it is not merely the value of the property for the use to which it has been applied by the owner that should be taken into consideration, but the possibility of its use for all purposes, present and prospective, for which it is adapted and to which it might in reason be applied, must be considered, and its value for the use to which men of prudence and wisdom and having adequate means would devote the property if owned by them must be taken as the ultimate test."

From section 219, as follows:

"The use for which a piece of land is especially available need not be excluded from consideration merely because the availability depends upon extrinsic conditions, the continuance of which is not within the control of the owner of the land. Thus a lot near a railroad station may be especially valuable for the site of a retail store, although the company if it saw fit might move the station away. The possibility of removal is considered and discounted by prospective purchasers, and thus is one of the elements in arriving at market value, but the existence of the station and the probability that it will remain should not be disregarded in determining market value for the purposes of eminent domain any more than it would be by a purchaser."

From section 219, as follows:

"The most characteristic illustration of the rule that market value is not limited to value for the use to which the land is actually devoted, and the situation in which it is most frequently invoked, and also most frequently abused, is when evidence is offered of what the value of a tract of land that is used for agricultural purposes or is vacant and unused would be if cut up into house lots. It is well settled that if land is so situated that it is actually avail-

able for building purposes, its value for such purposes may be considered, even if it is used as a farm or is covered with brush and boulders."

And from section 222, as follows:

"It occasionally happens that a parcel of real estate taken by eminent domain is of such a nature, or is held or has been improved in such a manner, that, while it serves a useful purpose to its owner, if he desired to dispose of it he would be unable to sell it at anything like its real value. A church, or a college building, or a clubhouse located in a town in which there was but one religious society, or college, or club, might be worth all it cost to its owners, but would be absolutely unmarketable. So also in many states an owner of land abutting upon a public street might be very glad that he owned the fee of the street, and was thus able to protect himself against the use of the street for other than street purposes without compensation; but it would be almost impossible for him to sell his interest in the street to a private purchaser. Even such a piece of property as a mill site or a reservoir site, or a factory or store of abnormal size may, to a somewhat less degree, be difficult to dispose of, though of great value to its owner.

"In such a case as similar property is not commonly bought and sold it is impossible to ascertain market value by the usual tests; in fact, as market value presupposes a willing buyer the conditions upon which such value is based are not present, and it is sometimes said that in cases of this character market value is not the measure of compensation and, as it is, of course, conceded that the owner cannot on that account be deprived of his property without any compensation whatever, some other measure is sought. It must, however, be remembered that market value is always based upon hypothetical conditions, and that it is never necessary to show that there was in fact a person able and willing to buy. The measure is still what another religious society or college or club or public service corporation, or abutting owner, would pay if there were one at hand; in other words, the measure is still market value, but as the usual means of ascertaining market value are lacking, other means must from the necessity of the case be resorted to. It is therefore proper in such cases to deduce market value from the intrinsic value of the property, and its value to its owners for their special purposes."

Those statements are supported by eminent authority.

We have carefully read this record, and we find nothing therein to sustain the contention of the city that the verdict is the result of passion or prejudice.

Complaint is made that there was error in refusing the instructions requested by the city. An examination of the record discloses that the cause was fairly submitted to the jury by instructions which stated the issues involved and the rule of law applicable thereto. In view of the instructions given we find no error in failing to give the instructions requested.

Complaint is made that the jury was permitted to know that two of the witnesses as to value were commissioners who had been appointed to appraise the damage, and in support thereof School Dist. v. Phoenix Land & Improvement Co., 297 Mo. 332, 249 S. W. 51, is cited. The facts shown by the record in this case come more nearly within the rule stated in City of Cape Girardeau v. Hunze (Missouri) 284 S. W. 471. We find no reversible error therein.

Complaint is made that the trial court refused to require Mr. Creekmore to plead the elements of his damage, and reliance is placed on Tillamook County v. Johnson, 96 Ore. 623, 190 P. 159. We think that the rule therein stated is not applicable to the facts and issues presented in this case.

The contention that since Mr. Creekmore was not entitled by law to have the flow of Spavinaw creek continued, the flow of the stream cannot be regarded as adding to the value of the property, is fully answered by the citation from Nichols on Eminent Domain, supra, and the cases therein cited. That the city might have had a right under the law to take the flow of the stream, a question not determined herein, is immaterial, since the record does not show that the city attempted to exercise any right other than that of eminent domain.

We have carefully examined the decision of this court in Muskogee Sand & Gravel Co. v. Hulbert, 156 Okla. 112, 9 P. (2d) 419, and we find nothing therein applicable to the issue presented in this case. Therein it was held that it was not error to reject testimony of a witness as to the market value of gravel, where his testimony shows that his knowledge is based on what is paid as royalty by lessees under leases not shown to be made at or near the time necessarily involved in the controverted question of value. That authority is cited in support of the contention of the plaintiff in error that it was error of the trial court to permit a witness to testify as to value of land after he had testified that he knew the value of the land. The authorities hereinbefore cited are to the contrary.

**302**

The city of Tulsa calls attention to some of the language used by this court in the decision in Creekmore v. City of Tulsa, 139 Okla. 249, 281 P. 782, and says that in the trial of this cause from which the judgment appealed from herein was rendered there was "a contemptuous disregard of the opinion of this Honorable Court in the prior appeal." Since the record on the prior appeal showed that the trial court had granted a new trial, and since the opinion of this court in that case discloses an affirmance of that judgment on the ground that the trial court did not abuse its discretion in granting a new trial, the statement of this court with reference to the evidence before it at that time is in no wise binding on this court on this appeal. Herein we are concerned with the question of whether or not there was any competent evidence reasonably tending to support the verdict and the judgment. On the former appeal we had before us for determination the question of whether or not the trial court abused its discretion in granting a new trial. The fact that we held on that appeal that the trial court did not abuse its discretion in granting a new trial in no wise prevents us from now finding that there is competent evidence in the record reasonably tending to support the verdict and judgment. The material distinction between the two appeals is that on the former appeal the trial court had not given its approval to the verdict, and on this appeal the trial court has given its approval to the verdict.

The record in this case contains competent evidence reasonably tending to show that Mr. Creekmore was the owner of a tract of land across which Spavinaw creek ran; that the land was taken by the city of Tulsa in a condemnation proceeding; that that land had a value for recreational purposes in addition to its value for agricultural purposes; that there was a demand for such land in that vicinity for recreational purposes; that there was some dispute as to the value of the land taken and the damage to the land not taken; that the issues were fairly tried; that they were submitted to the jury by proper instructions; that the jury elected to believe the testimony offered on behalf of Mr. Creekmore and to disbelieve the testimony offered on behalf of the city of Tulsa, and that the trial court gave its approval to the verdict of the jury and rendered a judgment in conformity therewith.

We find no reversible error in that judgment, and it is in all things affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, OSBORN, BUSBY, and WELCH, JJ., concur. McNEILL and BAYLESS, JJ., concur in conclusion.