**Robert N. FOGLESONG and George F. Harrington, Appellees,**

v.

**THURSTON NATIONAL LIFE INSURANCE COMPANY and Thurston National Insurance Company, Appellants.**

**No. 48432.**

Supreme Court of Oklahoma.

July 13, 1976.

As Amended on Denial of Rehearing Oct. 25, 1976.

Doerner, Stuart, Saunders, Daniel & Langenkamp by Sam P. Daniel, Jr., and Sam G. Bratton, II, Tulsa, for appellees.

Pray, Scott & Williamson by Donald F. Marlar and Terry R. Doverspike, Legal Intern, Tulsa, for appellants.

HODGES, Vice Chief Justice.

This action was brought by Robert N. Foglesong and George F. Harrington (dissenting shareholders) for the sole purpose of determining the fair value of shares of common stock held by them in Thurston National Life Insurance Company (Life Company) and Thurston National Insurance Company (Casualty Company). A judicial determination of the value of the stock was necessary because the parties failed to agree on the value of the shares held by the dissenting shareholders who had objected to a merger and consolidation action approved by the majority of the corporations' shareholders. There is no dispute that the shareholders had a right to dissent, and that they had properly exercised that right pursuant to the requirements of the Oklahoma Business Corporations Act. The only issue other than the determination of the fair market value of the stock is whether the action was timely filed in the trial court. We find that it was.

The Life Company and the Casualty Company are Oklahoma corporations. On December 11, 1972, the Life Company and the Casualty Company gave notice to all their shareholders of a special meeting of shareholders of the companies to be held December 21, 1972, for the purposes of approving a proposed merger. On De-

cember 20, 1972, the dissenting shareholders gave written notice of opposition to the proposed merger and notice of the intent to exercise their right to dissent if the action was approved by the shareholders pursuant to 18 O.S.1971 § 1:159(1).[1] The companies approved the merger described in the proxy December 29, 1972. On January 18, 1973, the dissenting shareholders timely made written demand for payment of the fair value of their stock and concurrently delivered all of the shares of the common stock of each company held by them in accordance with the requirements of 18 O.S.1971 § 1.159(2), (3).[2] Foglesong owned 4,318 shares of the Life Company, and 249 shares of the Casualty Company. Harrington owned 1,050 shares of the Life Company and 525 shares of the Casualty Company. Neither company responded to their offer within ten days as required by 18 O.S.1971 § 1.159(5).[3] The failure to reply was considered a rejection by the dissenting shareholders. It is not disputed that when the corporations' time to reply had expired without response, the right to file the instant action accrued.

Subsequent negotiations occurred. The Life Company and the Casualty Company offered $3.25 and $1.00 per share respectively for the stock February 9, 1973. The dissenting shareholders offered to sell their stock at the rate of $6.25 per share for the Life Company and $2.50 per share for the Casualty Company stock on February 19, 1973. When no agreement was reached among the parties as to the fair value of the Life Company or the Casualty Company stock, the dissenting shareholders instituted this action February 28, 1973.

---

1. Title 18 O.S.1971 § 1.159(1) provides in pertinent part:

Such shareholder shall, at the meeting at which such proposed corporate action is to be voted upon or at any time prior to such meeting, submit to the president or secretary of the corporation, or to the officer in charge of the registered office, a written objection to such corporate action setting out that his right to dissent shall be exercised if such action be approved by the shareholders' vote and giving his address to which notice thereof shall be delivered or mailed in the event of such approval.

2. It is provided by 18 O.S.1971 § 1.159(2), (3) in pertinent part:

(2) If such corporate action be approved by such vote, such shareholder shall, within twenty (20) days from the receipt of notice of such approval, present or mail to the president or secretary, or to the officer in charge of the registered office, a written demand that the corporation pay him the fair value of his shares. Such demand shall state the number and class of shares upon which he is demanding payment, and the estimated fair value of such shares, and shall contain a request that, in case the corporation shall not consent to pay such estimated fair value, the corporation shall give notice of the amount it claims to be the fair value thereof. The fair value of such shares shall be the market value thereof as of the day before the vote was taken authorizing such corporate action, excluding any appreciation or depreciation in consequence of such proposed action. If such shares be listed upon a recognized stock exchange and any of such shares shall have been sold upon such exchange upon the day aforesaid, the fair value thereof shall be presumed to be the highest price at which shares were thus sold upon such day in the absence of any evidence of fraud or collusion;

(3) Such shareholder shall, within such twenty (20) day period, submit to the corporation or to one of the aforementioned officers thereof his certificate or certificates of shares upon which he is demanding payment.

3. Title 18 O.S.1971 § 1.159(5) provides:

The corporation shall, within ten (10) days after receipt of the demand provided for in paragraph (2) hereof, given written notice to such dissenting shareholder at the address specified for such notice in such demand, or, in the absence of such address in such demand, such notice shall be given to such shareholder personally or mailed to the address at which notice of shareholder's meetings are required to be mailed. Such notice shall either set out that the corporation accepts the amount claimed in such demand and agrees to pay such amount within fifteen (15) days upon the surrender of the share certificates duly indorsed or contain an estimate by the corporation of the fair value of such shares together with an offer to pay the amount of such estimate within fifteen (15) days from the receipt of notice from such shareholder that he agrees to accept such amount upon the surrender of the share certificates duly indorsed.

January 28, 1973, the tenth day after demand by the dissenting shareholders for payment of the fair value of their stock, fell on a Sunday. Title 12 O.S.1971 § 73 [4] provides that when computing the time within which an act is to be done, the last day is excluded if it occurs on a Sunday. The Life Company and the Casualty Company could have timely served their rejection of the offer upon the dissenting shareholders on January 29, 1973. Failure to do so constituted a rejection on that day. The right to file the instant action by the dissenting shareholders accrued at the close of business on January 29, 1973. The statute, 18 O.S.1971 § 1.160(a) [5] gives the dissenting shareholders thirty days thereafter within which to file the action. The instant action was filed on February 28, 1973, within thirty days after the accrual of the right to file in the time prescribed by the statute. The trial court correctly overruled the demurrer to the timeliness of the petition.

The trial court determined the fair value of the shares as of the day before the merger was approved to be $5.00 per share for the Life Company stock and $2.00 per share for the Casualty Company stock. The salient question presented for our determination is whether the trial court erred in its computation of the fair value of dissenting shareholders' stock. The Oklahoma Business Corporation Act, 18 O.S. 1971 § 1.160(c) provides:

"On the trial of the action, the court shall determine whether the dissenting shareholder is entitled to relief, and, if the court shall so find, the court shall determine the fair value of said shares."

Evidence was introduced to show that on September 27, 1972, Professional Investors Life Insurance Company purchased 150,000 shares of stock in the Life Company for $5.40 per share and 43,000 shares of stock in the Casualty Company for $2.25 per share. These purchases represented the acquisition of majority control in the companies. The evidence reflects there were only two sales of stock on the open market in the Life Company near the time the merger was effected. On December 22, 1972, 180 shares were sold at $3.50 per share. Then, on the date the merger was approved by the shareholders, December 29, 1972, 100 shares were sold at $3.25 per share. No evidence of open market sales of the Casualty Company stock was presented.

The companies assert there was not competent evidence to sustain the computation of the trial court in finding the fair market value of the Life Company Issue at a value of $5.00 per share and the Casualty Company Issue at a value of $2.00 per share and that the purchase of the stock at $5.40 per share for the Life Company and $2.25 per share for the Casualty Company symbolized purchase of control in the companies and are not to be considered in the determination of fair market value.

The dissenting shareholders testified it was their opinion the stock was worth $6.25 and $2.50 per share. However, Foglesong also testified that although there was very little market for the stock he had purchased shares of stock "for what they were worth." In the two year period preceding

4. Computation of time is calculated by 12 O.S.1971 § 73:
     The time within which an act is to be done shall be computed by excluding the first day, and including the last; if the last day be Sunday, it shall be excluded.
5. Accrual of a cause of action by dissenting shareholders is determined by 18 O.S.1971 § 1.160(a):
     Any dissenting shareholder of a domestic corporation or any such corporation in whose

behalf a cause of action to have the fair value of dissenting shares determined has accrued may, within thirty (30) days after the accrual thereof but not thereafter, file a petition in the district court of the county in which the registered office of such corporation is located to have the fair value of such dissenting shares determined. If such petition be not filed within such period, then such shareholder shall be deemed to have waived his right to dissent.

merger, his purchases of Life Company stock were:

| | | | |
|---|---|---|---|
| 10 shares @ $4.00 per share | | June, 1971 |
| 5 shares @ $4.00 per share | | May, 1971 |
| 100 shares @ $4.00 per share | | May, 1971 |
| 100 shares @ $5.00 per share | | July, 1971 |
| 6 shares @ $4.00 per share | | January, 1972 |

It was also admitted by Foglesong that sales of life insurance policies decreased in 1972, and that the "going 'concern' value" of the Life Company was more in 1971 than 1972. The other dissenting shareholder purchased no stock, and made no inquiry as to market price in 1972. Although the corporate secretary for the companies testified the market value of the shares of stock were listed at $6.20 and $2.26 on the annual statement of the company, he also admitted similar valuations on the annual report to the state insurance commission were ordered reduced by almost 50% for the Life Company and that the insurance commissioner did not agree with the Casualty Company stock valuation. The corporate secretary also testified he did not think the stock could be sold for the amount which it was carried on the statement. The only evidence of stock purchases testified to by the corporate secretary were those by Professional Investors Life Insurance Company of $5.40 and $2.25 which represented purchase of controlling interest.

We realize that fair value is hardly self-executing in its clarity. Fair value is defined by 18 O.S.1971 § 1.159(2) as market value the day before the vote authorizing merger or reorganization.[6] Fair market value is generally characterized as the base price at which a stock could be sold by willing informed seller to an informed willing buyer, and generally refers to the price at which the stock was selling on the market prior to the action which is objected to, disregarding any change in price due to the action.[7] In the absence of a regular market in the shares or a recognized exchange and of available market quotations or stock price listing as suggested by 18 O.S.1971 § 1.159(2) to determine the fair value of the shares, the courts have been almost unanimous in using a combination of three principal methods of valuation: (1) net asset value; (2) market value, and (3) investment or earnings value.[8] The three elements of value must be weighted in such proportions as to reasonably reflect the importance and reliability of each to the final determination of fair value. Factors which courts have traditionally considered when apportioning weight among market

---

6. Title 18 O.S.1971 § 1.159(2) provides in pertinent part:
   " * * * The fair value of such shares shall be the market value thereof as of the day before the vote was taken authorizing such corporate action, excluding any appreciation or depreciation in consequence of such proposed action."

7. *City of Tulsa v. Creekmore*, 167 Okl. 298, 29 P.2d 101, 103 (1934).

8. These three principal factors are defined in *In Re Watt & Shand*, 452 Pa. 287, 304 A.2d 694, 698 (1973):
   (1) *Net Asset Value* is the share which the stock represents in the value of the net assets of the corporation. Such assets include every kind of property and value, whether realty or personalty, tangible or intangible, including good will and the corporation's value as a going concern.
   (2) *Investment Value* is an estimate of present worth in light of past, present and prospective financial records of the company and is obtained by capitalizing earn-

ings. There are two basic steps in the capitalization process: calculation of a representative annual earnings figure, and choice of a capitalization ratio which reflects the stability and predictability of earnings of the particular corporation.
   (3) *Market Value* refers to the price at which the stock was selling on the market prior to the action which is objected to, disregarding any change in price due to the action.

See also: Comments Corporations—Appraisal Statutes—Elements in Valuation of Corporate Stock, 55 Mich.L.Rev. 689 (1957); Lattin, "Remedies of Dissenting Stockholders Under Appraisal Statutes," 45 Harv.L.Rev. 233 (1931); Net Valuation of Dissenters' Stock Under Appraisal Statutes," 79 Harv. L.Rev. 1453, 1462 (1966); *American General Corp. v. Camp*, 171 Md. 629, 190 A. 225, 228 (1937); *Lucas v. Pembroke Water Co.*, 205 Va. 84, 135 S.E.2d 147, 150 (1964); Annot., Corporations—Valuation of Stock, 48 A.L.R.2d 430, 443 (1973).

value, investment value and asset value are the nature of the corporation, market demand for the stock, the business of the corporation, its earnings, net assets, and other variables such as general economic conditions, market prices of comparable companies, market price and earnings ratio, management and its policies; reserves for various contingencies; tax liabilities and future earnings.[9]

 The purchase of stock to gain controlling interests is not properly includible in determining the market value of the shares of stock, and the court may take judicial notice of the fact that acquisition of stock to acquire control is frequently made at premium prices.[10] The rationale for this approach is that widely held stock, as in a public issue corporation, is purchased primarily, if not solely, for investment, and its owners may accurately be termed investment shareholders. On the other hand, the controlling shareholder in a "mixed" corporation holds his stock primarily to effectuate control and to manage the business. He expects to receive a premium upon sale of the controlling stock based on the recognized separate worth of the control element as an increment to the investment value of the stock. Since an investment shareholder does not expect to participate in management when he purchases his stock, his expectations are not prejudiced by a transfer of control, and he should not share in the premium. Control has value to its holder who anticipates receiving consideration for its sales; investment shareholders expect their investment to be protected and not to participate in control.

Where a jury is waived, the trial court's findings are given the same force and effect of a properly instructed jury. This court will review a judgment based on conflicting evidence to ascertain only whether the judgment is supported by competent evidence.[11]

 While evidence was properly submitted including sales, earnings, book value and prospects, net asset value, investment value and market value,[12] we believe it was not sufficient to support the values placed on the stock of $5.00 and $2.25 by the trial court, and that the trial court's computation of stock valuation included premium to purchase controlling interest since the only other transactions in the Life Company stock within the same approximate time period were $3.50 and $3.25 per share.

REVERSED AND REMANDED FOR NEW TRIAL.

WILLIAMS, C. J., and BERRY, IRWIN, LAVENDER, BARNES and SIMMS, JJ., concurring.

DAVISON and DOOLIN, JJ., dissenting.

---

9. *Tome Land & Improvement Co. v. Silva*, 83 N.M. 549, 494 P.2d 962, 964 (1972).

10. *Sporborg v. City Specialty Stores*, 35 Del. Ch. 560, 123 A.2d 121 (Ch.1956); *Brown v. Hedahl's Q B & R*, N.D., 185 N.W.2d 249, 48 A.L.R.3d 414, 426 (1971).

11. *Jones v. Sibley*, 360 P.2d 519 (Okl.1961).

12. See *Gallois v. West End Chemical Co.*, 185 Cal.App.2d 765, 8 Cal.Rptr. 596, 600 (1960).