**MULTITEX CORPORATION OF AMERICA, Plaintiff-Appellee, Cross-Appellant,**

v.

**Peggy A. DICKINSON, Thomas H. Norris, and Kelly D. Cornelius as executors of the will of Robert L. Dickinson, deceased, and 3000 Shares of Stock in Colormasters, Inc., a Georgia Corporation, represented by certificates nos. 19 and 23, Defendants-Appellants, Cross-Appellees.**

No. 81–7087.

United States Court of Appeals, Eleventh Circuit.

Aug. 23, 1982.

As Corrected Jan. 10, 1983.

---

Powell, Goldstein, Frazer & Murphy, Robert W. Patrick, Thomas S. Richey, Atlanta, Ga., for defendants-appellants, cross-appellees.

Smith, Shaw, Maddox, Davidson & Graham, James D. Maddox, Rome, Ga., for plaintiff-appellee, cross-appellant.

Before MORGAN, TJOFLAT and JOHNSON, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

This appeal raises questions of the proper application of the dissenting shareholder provisions of the Georgia Business Corpora-

tion Code, Ga.Code Ann. §§ 22–1201, 22–1202 (1977). We have carefully considered both parties' challenges to the final judgment entered by the district court and for the reasons stated below conclude that the enumerated errors do not warrant alteration of that judgment.

## I. FACTS

The controversy underlying the legal questions before us arises from the merger of Colormasters, Inc., a Georgia corporation, into plaintiff-appellee (cross-appellant) Multitex Corporation of America, a corporation formed pursuant to the laws of Tennessee. The merger was authorized at a special meeting of Colormasters shareholders on April 11, 1978. Defendant-appellant Dickinson,[1] a minority shareholder, filed timely notice of election to dissent from the merger and demanded that he be paid "fair value" for his 3000 shares of Colormasters stock. Multitex offered Dickinson $21,000 ($7.00 per share) as the stock's fair value as of the close of business on the day prior to the date of merger authorization. Dickinson rejected the offer, and Multitex filed this action under section 22–1202(g) seeking appraisal of the Colormasters stock. Suit was originally brought in the Superior Court of Fulton County, Georgia, but defendant Dickinson removed the action on ground of diversity of citizenship to the United States District Court for the Northern District of Georgia.

On defendant's motion, the district court pursuant to rule 39(b), Federal Rules of Civil Procedure, ordered the case to be assigned for jury trial.[2] Subsequently, the parties by stipulation limited the jury determination to the question of the fair value of Dickinson's stock. After hearing expert testimony introduced by both parties, the jury awarded a verdict for $45,600 ($15.20 per share). The trial court later ordered that Multitex pay seven percent prejudgment interest and post-judgment interest at the rate of twelve percent, but denied Dickinson's request for attorneys' fees and expenses incurred for experts.

Dickinson filed notice of appeal from the court's denial of fees and expenses as well as the limitation of prejudgment interest to seven percent. Multitex cross-appealed challenging the jury determination of the stock's fair value. The appeal and cross-appeal present four basic issues: (1) did the trial judge adequately instruct the jury on evaluating the "fair value" of Colormasters stock; (2) whether Multitex was properly assigned the burden of proof and the burden of going forward with evidence of the worth of the Colormasters stock; (3) whether the limitation of prejudgment interest to seven percent was an abuse of discretion by the trial judge; and (4) whether Dickinson was improperly denied an award of attorneys' fees and expenses for experts.

## II. DISCUSSION

A. Jury Instructions on Fair Value of the Colormasters Stock.

Our initial inquiry focuses on the proper interpretation of section 22–1202(g)(4) which provides in relevant part

[The court] shall proceed to fix the value of the shares, which, for purposes of this section, shall be the fair value as of the close of business on the day prior to the

---

1. Subsequent to oral argument, this court granted a motion by counsel for defendant, requesting that Peggy A. Dickinson, Thomas H. Norris and Kelly D. Cornelius, as executors of the will of Robert L. Dickinson, deceased, be substituted as defendant-appellant and cross-appellee in the instant suit.

2. Neither party sought review of this order. Therefore, we do not decide today whether Ga.Code 22–1202(g) provides for a jury trial as a matter of right, or as a matter within the court's discretion.

shareholders' authorization date, excluding any appreciation or depreciation directly or indirectly induced by such corporate action or its proposal. . . . The court may appoint an appraiser to receive evidence and recommend a decision on the question of fair value. Such appraiser shall have the power, authority and duties specified in the order appointing him, or in any order supplemental thereto.

Multitex argues that the term "fair value" as used in this provision encompasses three elements: net asset value, investment value and market value. Multitex further contends that the district court erred in refusing to give the jury instructions setting forth each of these elements and requiring that each be considered in valuing Dickinson's stock.

Nowhere in the Georgia Business Corporation Code is the term "fair value" defined, nor has it been subject to judicial interpretation by any Georgia court. Multitex argues that since the provision was adopted in 1968 from the New York Business Corporation Law, we should employ the "bag and baggage" doctrine of statutory construction and look to applicable New York court decisions. Under that doctrine as previously employed by Georgia courts, "when a statute has been adopted from another State, the judicial construction already placed thereon by the highest court of jurisdiction from which it was taken accompanies it, and is treated as incorporated therein." *Seaboard Air Line Railroad Co. v. Fountain*, 173 Ga. 593, 599, 160 S.E. 789 (1931); *Tamiami Trail Tours, Inc. v. Georgia Public Service Commission*, 213 Ga. 418, 99 S.E.2d 225 (1957). Assuming the applicability of the doctrine in the instant

case,[3] we look to any pre-1968 New York court decisions discussing "fair value" standards in appraisal proceedings.

■ In the 1931 decision *In Re Clark's Will (Matter of Fulton)*, 257 N.Y. 487, 178 N.E. 766 (1931), the court held that an appointed appraiser could not consider market quotations as controlling of "fair value" without *consideration* of other factors affecting the stock's worth, such as net asset value and investment value. Subsequent decisions of New York courts have interpreted the holding in *Matter of Fulton* to require an appraiser's examination of net asset value, investment value and market value in determining a stock's worth. *Application of Behrens*, 61 N.Y.S.2d 179 (App. Div.1946), aff'd, 271 A.D. 1007, 69 N.Y.S.2d 910 (1947); *In Matter of Endicott Johnson Corporation v. Bade*, 37 N.Y.2d 585, 376 N.Y.S.2d 103, 338 N.E.2d 614 (1975). Other states have followed New York's lead and have also required consideration of these three factors by stock appraisers. *See, e.g., In Re Valuation of Common Stock of Libby McNeill & Libby*, 406 A.2d 54 (Me.1979); *E. F. Gibbons v. Schenley Industries, Inc.*, 339 A.2d 460 (Del.Ch.1975); *Piemonte v. New Boston Garden Corporation*, 377 Mass. 719, 387 N.E.2d 1145 (1979); *Tome Land & Improvement Co., Inc. v. Silva*, 83 N.M. 549, 494 P.2d 962 (1972); *Brown v. Heydahl's— OB&R, Inc.*, 185 N.W.2d 249 (N.D.1971); *Foglesong v. Thurston National Life Insurance Co.*, 555 P.2d 606 (Okla.1976); *Santee Oil Company, Inc. v. Cox*, 265 S.C. 270, 217 S.E.2d 789 (1975).

Multitex's citation of these decisions as establishing standards for jury instructions on "fair value" fails to acknowledge a critical distinction between the fact finding

---

**3.** Because of the 1969 amendment to section 22–1202(g)(1) removing the requirement for a nonjury proceeding, it is highly doubtful that the bag and baggage doctrine could be applied in the instant case. Multitex also argues, however, that case authority from other jurisdic-

tions that have copied the New York Business Corporation Law, should be considered persuasive in resolving the issues we now face. We therefore choose to reach a holding in the instant case after carefully examining and distinguishing this cited authority.

function of a jury and the independent fact gathering ability of a court appointed appraiser. As a careful reading of the New York case authority reveals, the rule requiring appraisers to separately consider investment value, net asset value and market value was intended to assure that an appraiser's investigation and recommendation, upon which the appointing court might heavily rely, did not ignore any indicia of fair value. The purpose of the three element rule was noted by the New York Court of Appeals in *Endicott Johnson:* "[A]ll three elements do not have to influence the result in every valuation proceeding. It suffices if they are all considered. Compelling the consideration of all of them, including those which may turn out to be unreliable in a particular case, has the salutary effect of assuring more complete justification by the appraiser of the conclusion he reaches. It also provides a more concrete basis for court review." 37 N.Y.2d at 588, 376 N.Y.S.2d at 106, 338 N.E.2d at 616.

A jury valuing stock pursuant to section 22–1202 has no independent investigatory powers, and therefore is not functioning as a court appointed appraiser. Its responsibility is limited to weighing the evidence of a stock's worth that is presented before it and making the "ultimate valuation." The New York cases cited by Multitex do not set forth standards for making this final determination. Indeed, as the New York Court of Appeals has recognized, the ultimate valuation

> rests largely within the discretion of the lower courts.... "No rule can be laid down for determining the actual or true value of stock of a given class except one of a very general nature, and which may, in a particular case be inapplicable ... because of the existence of a state of facts peculiar to the situation involved in the particular case."

*Id.*

Turning to the jury instructions actually given by the court below, we find them to be a proper statement of Georgia law. The district court instructed the jury that fair value represented

> the price at which a willing seller and a willing buyer will be tried, both having original knowledge of the facts. Now a willing seller is one who desires, but is not obligated to sell, and a willing buyer is one who wishes to buy, but is under no obligation, compulsion or necessity to buy. Determination of the fair value of stock owned by Mr. Dickinson in Colormasters, Inc., as of the close of business on April 10, 1978, is necessarily based somewhat on assumption rather than absolute fact.

The jury was also instructed that it should determine fair value "using as a guideline any and all evidence that [it] determined to accept which was legally presented ... in Court."

The willing seller/willing buyer standard has been found by Georgia courts to provide proper guidance to a jury when determining the "fair market value" of real property in condemnation proceedings. *See, e.g., Bowers v. Fulton County,* 221 Ga. 731, 146 S.E.2d 884 (1966). The standard has, however, also been recognized by the Georgia Supreme Court to "permit the proof of the varied elements of value; that is all the facts which the owner would properly and naturally press upon the attention of a buyer to whom he is negotiating a sale, and all other facts which would naturally influence a person of ordinary prudence desiring to purchase." *Central Georgia Power Co. v. Mays,* 137 Ga. 120, 123, 72 S.E. 900 (1911). Because all evidence of a stock's worth, whether compiled under a market value, investment value or net asset value approach, would naturally influence a buyer of stock, the jury was properly guided in its consideration of all such evidence under a willing seller/willing buyer standard.[4]

█ In a briefly raised secondary attack on the jury instructions, plaintiff challenges

---

4. In support of its position that the willing seller/willing buyer standard does not encompass pass the evidence presented under all three valuation methods, Multitex cites language

the charge to the jury that "fair value" is based "somewhat on assumption rather than absolute fact" because it allegedly encouraged the jury to "ignore undisputed facts and engage in speculation." We find this contention to be without merit. The charge was accurate and served to assist the jury in evaluating expert testimony, much of which was introduced by Multitex, that relied heavily on predictions of market conditions and economic stability of the corporation. Further, the jury instructions viewed as a whole leave no doubt that the jury was properly guided in its consideration of the evidence presented. *First Virginia Bankshares v. Benson*, 559 F.2d 1307, 1316 (5th Cir. 1977), *cert. denied*, 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed.2d 802 (1978).

**B. Burden of Proof and Burden of Going Forward With Evidence.**

■ During pretrial proceedings the district court, on defendant's motion and over plaintiff's objection, ruled that Multitex had the burden of proof and the burden of going forward with evidence of the "fair value" of Dickinson's stock. Later Multitex excepted to a jury charge which provided that

> from the Maine Supreme Court's decision in *In Re Valuation of Common Stock of Libby, McNeill & Libby*, 406 A.2d 54 (Me.1979). *Libby* involved a valuation proceeding under a statute almost identical to section 22–1202 of the Georgia Business Corporation Code. Holding that the trial court erred in not accepting the appraiser's recommendation of fair value, the court stated in a footnote:
>
> > The appraiser defined fair value as 'what a willing seller would take and a willing buyer would give in a free arm's length transaction in which the parties are informed as to the facts requisite for a rational judgment.' We find the appraiser's statement of the law, so far as it goes, to be correct. In approving the 'willing buyer/willing seller' approach, however, we do not mean to be understood to say that the market price of the stock in issue is to be taken as the sole criterion of the 'fair value' of the stock. The appraiser of course did not so limit his search. We reiterate that all three of the component elements of value should be considered: stock market price, net asset value, and investment value. Each element provides evidence of the price at

Now the burden of proof in this case is upon the plaintiff to prove its side of the case by a preponderance of the evidence. Now by preponderance of the evidence, it means you prove that something is more likely so than not so. It means that you have tipped the scales, so to speak, in your favor by producing a preponderance of the evidence.

In determining whether any fact in issue has been proved by a preponderance of the evidence in the case, you will, unless otherwise directed, consider the testimony of all witnesses and consider all exhibits, regardless of who produced the witness or who produced the documents.

Now, in this case while the plaintiff has the burden of proof to prove the fair value of the shares of stock, if the defendant asserts and claims that the shares of stock has more value than is proven by a preponderance of the evidence by the plaintiff, Mr. Dickinson is bound to come forward with the evidence to show you by a preponderance of the evidence on his side that it is worth more than that asserted by Multitex, the plaintiff in the case.

> which a willing buyer and a willing seller would strike a bargain.
>
> *Id.* at 61.

Even if we were to accept the *Libby* court's view of the willing seller/willing buyer standard, the jury in the instant case obviously did not limit its inquiry to the market value of Dickinson's stock. The only evidence of market price introduced at trial set the value of the stock at less than $7.00 per share, yet the jury fixed the stock's value at more than $15.00 per share. Further, the district court repeatedly instructed the jury that it should use all acceptable evidence in determining fair value. Evidence was introduced by Multitex as to market value, investment value and net asset value. During closing argument counsel for Multitex reviewed this evidence and explained the importance of each valuation method to the jury. Viewing the entire charge in light of the evidence presented and the arguments of counsel, we are left with the firm belief that the jury understood the issues before it and the duties entailed in determining fair value. *See Dwoskin v. Rollins, Inc.*, 634 F.2d 285 (5th Cir. 1981).

As with the issue discussed above, the question of burden of proof under section 22–1202 has never been addressed by a Georgia appellate court. The district court's decision to assign Multitex the burden of proof was based upon the view that proceedings under Georgia's dissenting shareholders provisions are analogous to Georgia condemnation proceedings. The charge given the jury below is, therefore, an accurate restatement of the holdings by several Georgia courts in condemnation cases. *See, e.g., Georgia Power Co. v. Slappey,* 121 Ga.App. 534, 174 S.E.2d 361 (1970); *Lewis v. State Highway Department,* 110 Ga.App. 845, 140 S.E.2d 109 (1964); *See also White v. Georgia Power Co.,* 237 Ga. 341, 227 S.E.2d 385 (1976); *Georgia Power Co. v. Brooks,* 207 Ga. 406, 62 S.E.2d 183 (1950).

On appeal, Multitex argues that a dissenting shareholder is in all substantive respects the plaintiff in appraisal proceedings and should therefore bear the burden of proof. Plaintiff also asserts that condemnation proceedings and appraisals under section 22–1201 are not analogous. We must again reject plaintiff's contentions. First, we agree with the district court that a strong analogy exists between condemnation and stock appraisal proceedings; for both are statutory proceedings mandated when an individual is involuntarily deprived of his or her rights in or to property. *Compare* Ga.Code Ann. § 36–302 *with* Ga.Code Ann. § 12–1201. Second, imposing the burden of proof on the corporation in appraisal proceedings is more harmonious with the general statutory scheme. The corporation is required by statute to institute the appraisal proceedings. Ga.Code Ann. § 22–

1202(g)(1). Without some contrary expression of legislative intent, we find it incredible that institution of proceedings by the corporation would be *mandated* only to impose upon the shareholder the burden of coming forward with evidence. Also, the Act's purpose of affording protection to minority shareholders (see comment to Ga. Code Ann. § 22–1201) is better furthered if the corporation bears the burden of proof. A corporation has immediate and unrestricted access to information concerning its financial condition and faces only a comparatively minimal burden in presenting that information to the court. On the other hand, discovery and assimilation of the same information by a minority shareholder might be an insurmountable financial and impractical burden. Accordingly, we must reach the conclusion that the burden of proof and the burden of going forward was properly borne by Multitex.

### C. Dickinson's Contentions on Appeal.

██ Extensive discussion is not warranted in addressing Dickinson's challenges to the trial court's limitation of prejudgment interest to seven percent and its denial of defendant's request for awards of attorneys' fees and expenses for experts. The amount of prejudgment interest assessed as well as whether to award a dissenting shareholder fees of counsel and expenses for experts are decisions left to the sound discretion of the trial judge under the provisions of section 22–1202.[5] After carefully reviewing each of Dickinson's arguments, we are unable to conclude that the trial court in any respect abused its discretion in applying those provisions to the facts of the instant case.

---

5. Section 22–1202(g)(6) provides that "[t]he final order shall include an allowance for interest, at such rate as the court finds to be equitable, from the shareholder's authorization date to the date of payment." Section 22–1202(g)(7) provides that costs and expenses of the appraisal proceedings shall be assessed against the plaintiff corporation, but that "such expenses shall exclude the fees and expenses of counsel or experts employed by any party unless the court, *in its discretion,* awards such fees and expenses." The provision further specifies three criteria that the court must consider in making its determination: "(A) That the fair value of the shares [as] determined materially exceeds the amount which the corporation offered to pay; (B) That no offer was made by the corporation; and (C) That the corporation failed to institute the special proceeding within the period specified therefor." The subsection does not, however, restrict the judge's inquiry to these three facts in exercising its discretion to award the fees and expenses of counsel and/or experts.

### III. CONCLUSION

For the reasons stated above, the judgment entered by the district court is

**AFFIRMED.**